[No. 32988. Department One. April 1, 1955.]

BERNICE M. LEWIS, *Respondent*, v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Appellant*.[1]

*The Attorney General* and *Haydn H. Hilling, Assistant,* for appellant.

*MacDonald, Hoague & Bayless,* for respondent.

DONWORTH, J.—The sole question presented by this appeal is whether respondent's notice of appeal to the board of industrial insurance appeals from an order of the supervisor rejecting her claim for compensation for an occupational disease was filed within the time prescribed by RCW 51.52.060. If her notice of appeal was timely given, the board had jurisdiction; otherwise, it did not.

The board, after hearing the testimony of respondent and her attending physician, dismissed the appeal because of noncompliance with the statute above mentioned. Respondent appealed from this ruling to the superior court for King county, where the matter was heard by the court, sitting without a jury, upon the record made before the board. The court reversed the action of the board and remanded

[1] Reported in 281 P. (2d) 837.

the matter for consideration on the merits. The department of labor and industries has appealed from the order of the superior court.

Appellant assigns error in the making of three findings of fact, three conclusions of law, and entering the order appealed from and in denying its motion for new trial.

There was no dispute of fact in the testimony presented, although the board made certain findings upon which it based its conclusion that it lacked jurisdiction, and the trial court made other findings upon which it based the opposite conclusion. Respondent and her attending physician were the only witnesses who testified before the board. Appellant offered no evidence at all.

The following chronological list of events will assist in understanding the problem involved:

May 15, 1951—Respondent filed with appellant her claim for compensation for an occupational disease. At that time, she had been a patient in Firland sanatorium in Seattle for nearly two months.

July 24, 1951—The supervisor rejected her claim.

From June to the middle of November, 1951—Respondent was seriously ill with tuberculosis and tuberculous meningitis and suffered from loss of memory and mental confusion to the extent that she was unable to transact any business. During the latter part of this period, her health gradually began to improve, and there were brief intervals during which she could understand what was taking place around her. For nearly a year prior to the hearing before the board on December 15, 1952, her memory was normal.

Early in October 1951—Respondent showed her physician a copy of the supervisor's order rejecting her claim and stated that her claim had been denied. At that time, respondent was able to understand that the matter was important, although she was unable to attend to it herself. The physician referred the document to a social service worker, who conferred with respondent's husband about it. They told respondent about receiving it. There was no testimony as to what became of this copy of the supervisor's order except that respondent stated at the hearing before

the board that she had not seen it since showing it to her physician and had no idea what happened to it.

October 11, 1951—Respondent's husband conferred with an attorney regarding an appeal.

December 2, 1951—Respondent signed a power of attorney giving her husband authority to represent her in this matter.

September 12, 1952—Respondent prepared her notice of appeal. In this letter, addressed to the board, respondent stated in part:

"I am writing in reference to my claim for industrial compensation which was denied July 24, 1951, and which was not appealed within sixty days as I was too ill to do it at the time. I thought an appeal had been filed in my behalf but have just learned that it was not. I am, therefore, asking that I be permitted to enter an appeal at this time.

"I was seriously ill at the time the notice was received and by the time I was enough better to give consideration to having some action taken, the sixty days had elapsed. Early in October I discussed the situation with Miss Zelma Wood, medical social worker at Firland, and arrangements were made for me to give power of attorney to my husband, William Lewis. Since he was not familiar with the appeal procedure, he engaged the law firm of [names omitted] to assist him. He first contacted . . . October 11, 1951, but there was a delay in sending the power of attorney to the hospital for my signature, and it was not received and signed until *December 2, 1951*. Since then it has been my understanding that the attorneys were handling the appeal for me. However, I have just learned that the attorney recently telephoned the sanatorium for information about whom to contact regarding an appeal. I have, therefore, rescinded the power of attorney and am no longer being represented by . . . It is because of these circumstances and the fact that it was not due to my own negligence that the order was not appealed before, that I am asking that the decision be reviewed now. . . ."

The three findings of the trial court which are challenged by appellant read as follows:

"V. That there is a total absence of evidence that the copy of the rejection order was brought to her attention or was available to her during any of these lucid periods or after November, 1951, when she permanently regained her

full consciousness. The plaintiff herself testifies that she has no memory of seeing it and does not know what happened to it.

"VI. That after regaining her full mentality, the plaintiff was advised by her husband and by a social worker that her claim had been rejected by the Department of Labor and Industries.

"VII. That there is a total absence of evidence that the plaintiff was ever advised formally or informally of the 60-day appeal period, at a time when she had sufficient mentality to understand the same."

In this case, the trial court did not see and hear the witnesses, but based his findings on the record made before the board. Consequently, this court can evaluate the evidence as readily as the trial court.

As we read the record, it appears to us from the undisputed testimony of respondent and her physician, and from respondent's letter of September 12, 1952 (quoted above), that at all times subsequent to the middle of November, 1951, she was able to understand the status of her claim and the necessity for appealing from the rejection thereof.

On December 2, 1951, she executed the power of attorney for the purpose of prosecuting such an appeal and gave it to her husband. In her letter of September 12, 1952, she makes no assertion that she was not physically or mentally able to attend to this matter on and after December 2, 1951, when she signed the power of attorney. In fact, the only reason stated in her notice of appeal for not giving it earlier is that she thought that the attorney was prosecuting an appeal on her behalf, and after relying on this supposition for nine months, had just learned that nothing had been done.

Parenthetically, it should be emphasized that the attorneys whom respondent's husband consulted on October 11, 1951, relative to handling her appeal were not the attorneys who are now representing her in this case.

The burden was upon respondent to show compliance with RCW 51.52.060, which provides:

"Any workman, beneficiary, employer, or other person aggrieved by an order, decision, or award of the department must, before he appeals to the courts, file with the board and

the director of labor and industries, by mail or personally, *within sixty days from the day on which such copy of such order*, decision, or award *was communicated to such person*, a notice of appeal to the board: *Provided*, That failure to file notice of appeal with both the board and the department shall not be ground for denying the appeal if the notice of appeal is filed with either the board or the department: *And provided*, That, if within the time limited for filing a notice of appeal to the board from an order, decision, or award of the department, the department shall direct the submission of further evidence or the investigation of any further fact, the time for filing such notice of appeal shall not commence to run until such person shall have been advised in writing of the final decision of the department in the matter: *Provided further*, That the department, either before receiving a notice of appeal, or within thirty days thereafter, may modify, reverse or change any order, decision, or award, and the person appealing to the board may thereupon withdraw his appeal." (Italics ours.)

See *Nafus v. Department of Labor & Industries*, 142 Wash. 48, 251 Pac. 877, and *Smith v. Department of Labor & Industries*, 1 Wn. (2d) 305, 95 P. (2d) 1031.

Respondent calls our attention to the provisions of RCW 51.52.050, which provides:

"Whenever the department of labor and industries, hereinafter called the 'department,' has made any order, decision, or award, it shall promptly serve the workman, beneficiary, employer, or other person affected thereby, with a copy thereof by mail, which shall be addressed to such person at his last known address as shown by the records of the department. The copy, in case the same is a final order, decision, or award, shall bear on the same side of the same page on which is found the amount of the award, a statement, set in black faced type of at least ten point body or size, that such final order, decision, or award must be appealed to the board of industrial insurance appeals, Olympia, within sixty days, or the same shall become final.

"Whenever the department has taken any action or made any decision relating to any phase of the administration of this title the workman, beneficiary, employer, or other person aggrieved thereby may appeal to the board and any such person aggrieved by the decision and order of the board may thereafter appeal to the superior court, as prescribed in this chapter."

She argues that the appeal period starts running from the day when "such copy of such order" is communicated to the claimant, *i.e.*, an order which contains a statement in ten-point black-faced type that the order must be appealed to the board within sixty days or it shall become final. It is her contention that her awareness in October, 1951, that her claim had been rejected could not be considered as equivalent to the required communication of a copy of the order in the form prescribed in the statute above quoted.

This argument might be persuasive if respondent were able to show that the required statement in black-faced type was not on the document which she showed her physician in October, 1951, and that she was misled by its absence. The undisputed evidence is that, immediately after this incident, her husband, on October 11, 1951, consulted an attorney in regard to prosecuting an appeal on her behalf. In her notice of appeal, she made no claim that the copy of the order was insufficient, but admitted that it was received while she was seriously ill and that after she had recovered sufficiently to give consideration to the matter, the sixty days had elapsed. She then gave her husband a power of attorney and did nothing further about the matter for nine months. The presence or absence of the notice in black-faced type on the copy of the supervisor's order would not have changed respondent's course of conduct in any respect regarding the time of taking her appeal.

Respondent failed to sustain the burden of proving that a copy of the supervisor's order was not "communicated" to her in compliance with RCW 51.52.050 and 51.52-.060. On the contrary, the uncontradicted evidence shows that it was so communicated to her early in October, 1951, at a time when she was able to understand its purport sufficiently to call it to the attention of her attending physician with the oral comment that her claim had been denied by the supervisor. This resulted in the matter being referred to her husband, who immediately consulted attorneys relative to an appeal.

When respondent had recovered from her illness and had become mentally able to transact business, she gave her

husband a power of attorney on December 2, 1951, for the purpose of prosecuting an appeal. She must have at that time been aware of the necessity of prosecuting her appeal which arose as the result of the communication of the supervisor's order to her approximately two months prior thereto. After December 2, 1951, respondent gave no further attention to her appeal for some nine months, when she discharged the attorneys and prepared a notice of appeal herself.

Her notice of appeal of September 12, 1952, cannot be held to have been given within sixty days after the copy of the supervisor's order was communicated to respondent as required by RCW 51.52.060. Although the board of industrial insurance appeals is a quasi-judicial body (*Floyd v. Department of Labor & Industries*, 44 Wn. (2d) 560, 269 P. (2d) 563), it is only a tribunal of special statutory jurisdiction, and the essential facts to show its jurisdiction must be proven before it can consider the merits of a particular case (*Smith v. Department of Labor & Industries, supra*). Respondent has failed to prove these essential facts in this case. The burden was upon her to do so. *MacVeigh v. Division of Unemployment Compensation*, 19 Wn. (2d) 383, 142 P. (2d) 900. Therefore, the board of industrial insurance appeals had no jurisdiction as to respondent's case.

It follows that the trial court erred in entering the order appealed from and in making the findings and conclusions upon which it is based.

The order is reversed, and the cause remanded to the superior court with directions to vacate its order of March 26, 1954, and enter a new order affirming the decision and order of the board of industrial insurance appeals dated April 29, 1953.

HAMLEY, C. J., SCHWELLENBACH, FINLEY, and WEAVER, JJ., concur.