[No. 2487-1.   Division One.   June 10, 1974.]

DANA M. RUST, *Respondent*, v. WESTERN WASHINGTON STATE COLLEGE et al., *Petitioners*.

*Slade Gorton, Attorney General*, and *Stephen G. Jamieson, Assistant*, for petitioners.

*Thom, Mussehl, Navoni, Hoff & Pierson* and *Thomas R. Dreiling,* for respondent.

HOROWITZ, J.—Petitioners seek review by writ of certiorari of an order of the trial court requiring them to afford respondent, Dana M. Rust, a formal administrative hearing on his grievance against petitioners, including Western Washington State College.

The facts of the case, stated in some detail, are these. On March 7, 1972, respondent Rust (Rust) was notified by the college that his participation in the Education Professions Development Act Fellowship Program in the graduate school of Western Washington State College had been unsatisfactory and was terminated. At Rust's request, he was granted a hearing before a committee composed of student and faculty representatives of the Department of Education in accordance with the college's procedures for handling academic complaints within that department. Either before or after Rust's request for a hearing, he applied to the Northwest Washington Legal Services for assistance at the college hearing or hearings. That organization assigned Ms. Judith K. Bush for that purpose. At that time she did not have a license to practice law in this state, but according to Rust's counsel on appeal she was then a legal intern.

During April 1972 the academic complaint committee held the hearing as requested by Rust. At that hearing Rust appeared in person and with Ms. Bush. They had a copy of the procedures published by the college governing academic complaints. An assistant attorney general appeared on behalf of the college and the State of Washington. As a result of the hearing, the committee upheld the termination of Rust's participation in that program.

Rust then requested Dr. J. Alan Ross, dean of the college's graduate school, to review the decision of the academic complaint committee. Accordingly, a review hearing was held on May 26, 1972. Only Dean Ross, Rust, and Ms. Bush attended. The assistant attorney general appearing at the first hearing was unable to attend. Dean Ross rendered

a decision (Report of Review) on May 31, 1972, adhering to the decision of the academic complaint committee. His opinion states:

> This removal from the program is the principal subject of the appeal which Mr. Rust has made in accordance with provisions set forth in the College catalogue.
>
> . . .
>
> The review procedures which are provided are not competent to produce judgments of such grave consequence, nor to enforce their remedies. . . .
>
> Mr. Rust's action, should he persist in it, requires a court operating under strict rules of evidence, possessing the power of subpoena and capable of enforcing its conclusions.

The matters next stated come from affidavits filed in the hearing before the trial court on petitioners' motion to dismiss Rust's appeal from Dean Ross' decision. Ms. Bush's affidavit dated June 29, 1973, and signed by her as "Staff Attorney, Northwest Washington Legal Services," states in part:

> That I served as advisor to Dana Rust in an administrative hearing at Western Washington State College in May of 1972. At that time I was not admitted to practice law in the State of Washington, and I was not serving as Mr. Rust's attorney. Following Mr. Rust's final hearing at Western Washington State College, I informed him that Northwest Washington Legal Services for whom I worked, could not take his case to court and that he should approach private counsel if he desired to pursue the matter further. Mr. Rust then informed me that he had retained J. Grahame Bell as his attorney.

The affidavit further states:

> When Mr. Rust approached our office to represent him at a grievance hearing at Western Washington State College, I was given by the Department of Education a copy of a grievance procedure. I was led to believe by Dr. Hite, Dean of the Education Department, and by William Gingery of the Attorney General's office, that these procedures constituted Dana Rust's administrative remedies within the college. . . . Dr. Ross specifically stated to us at the time of Mr. Rust's appeal to him, that if Mr. Rust was not satisfied with his decision, then Mr. Rust's

next recourse would be in a court of law. At no time did any of the college administrators or professors nor did Mr. Gingery make mention of R.C.W. 28B.19 and I was not aware that we were proceeding under any remedies outlined in state statute.

. . . I did no research of R.C.W. 28B.19 because I was not aware that it applied to Mr. Rust's grievance procedures in the Department of Education and at no time did the Department or the Dean of Graduate Studies or the attorney general's representative mention R.C.W 28B.19 to me. . . .

I especially inquired of Dr. Ross at the time of our appeal before him, if there were other avenues to pursue within the college, and he assured me that his decision was final within the college and that our next step would be to file an action in a court of law.

Rust's affidavit in substance states he did not know of the procedures set forth in RCW 28B.19, *et seq.*; he was never informed of their applicability to his case either by the assistant attorney general of the state of Washington or the college; the college publication known as "The Navigator" did not refer to administrative procedures contained in RCW 28B.19, *et seq.*, and he was therefore misled as to his proper remedies. His affidavit makes no mention of Ms. Bush. Mr. Bell's affidavit states he was retained by Rust to prosecute an appeal from Dean Ross' decision. The date he was so retained is not stated. The affidavit further states he discussed with Ms. Bush of the Northwest Washington Legal Services "her role as attorney for Mr. Dana Rust in the prior two administrative hearings . . ." Affidavits filed on behalf of petitioners disagree in part with affidavits filed on behalf of Rust. Thus, Assistant Attorney General Gingery's affidavit states he did not become college counsel until July 15, 1972, after the hearings. No affidavit denying this statement has been filed. No evidence was taken, however, to resolve any conflicts.

On June 21, 1972, Rust filed a "Petition for and Notice of Judicial Review" to the trial court stating it was pursuant to RCW 28B.19.150. On May 31, 1973, a year after Dean Ross' decision, Rust submitted a request to the president of

Western Washington State College for a formal hearing before the college on his grievance pursuant to RCW 28B.19.110 and .120. The college refused his request because the request had not been filed "within ten days after conclusion of the informal proceeding and notice of the final decision to the party charged with an offense." RCW 28B.19.110.

On June 22, 1973, Rust filed a motion in aid of his June 21, 1972, appeal to the court below for an order directing petitioners to produce certain records. Petitioners moved to dismiss the appeal, contending that under RCW 28B.19.150 the court lacked jurisdiction to review Dean Ross' decision. The motion was heard solely on affidavits, including those already described. On August 17, 1973, the court entered "Findings of Fact, Conclusions of Law and Order." The order directed Western Washington State College to afford Rust a formal hearing pursuant to RCW 28B.19.

The reasons for the order are stated in the findings and conclusions. These state in substance: (1) Rust had never had a formal hearing before the college as required by RCW 28B.19.120; (2) he failed to take the appropriate steps to request a formal hearing before the college as a result of misunderstanding on his part and of his acting counsel; (3) the requirements of RCW 28B.19 "were not fully appreciated by Ms. Bush and Mr. Bell in their representation of the plaintiff"; (4) the college "unwittingly" contributed to the misunderstanding; and (5) the terms of RCW 28B.19 are not clearly set forth in the Navigator (college catalog). The court concluded (1) RCW 28B.19 should not be given "a narrow and technical application in this case and to hold that the plaintiff has lost his right to a hearing"; (2) the case "should be remanded to defendant Western Washington State College with instructions to afford the plaintiff a formal hearing pursuant to RCW Chapter 28B.19." Petitioners next filed an application for writ of certiorari to this court to review the court's formal order of remand. The writ was granted with directions to file a certified record and briefs. These have now been filed.

■ We agree with petitioners that Rust's request for formal hearing was untimely. The 10-day provision contained in RCW 28B.19.110 fixes the outermost time limit for requesting a formal hearing. That time limit is mandatory and jurisdictional—a conclusion analogically supported by cases involving time limitations in other statutes. Some of these cases are *Lewis v. Department of Labor & Indus.*, 46 Wn.2d 391, 281 P.2d 837 (1955); *Smith v. Department of Labor & Indus.*, 1 Wn.2d 305, 95 P.2d 1031 (1939); *Nafus v. Department of Labor & Indus.*, 142 Wash. 48, 251 P. 877 (1927); *Knoll v. Dudley*, 20 Ohio App. 2d 339, 254 N.E.2d 387 (1969); *McCoy v. Bureau of Unemployment Compensation*, 81 Ohio App. 158, 77 N.E.2d 76 (1947).

RCW 28B.19.150, pursuant to which Rust took his appeal, provides that appeals thereunder are limited to

a contested case where formal proceeding has been utilized, whether such decision is affirmative or negative in form, . . . such party may not use any other procedure to obtain judicial review of a final decision, even though another procedure is provided elsewhere by a special statute or a statute of general application.

Rust contends the hearing before Dean Ross was a "formal proceeding" required by RCW 28B.19.150. The trial court disagreed and so do we. RCW 28B.19.110 provides the request for "formal hearing" must be "directed to the president of the institution or his designee . . ." There is no showing Dean Ross was the college president's designee following a request for formal hearing. Rust's request, addressed to the college president and filed 1 year after the conclusion of the Dean Ross informal hearing, suggests Rust's belated recognition he had not theretofore made the request for formal hearing which RCW 28B.19.110 requires.

Rust, in an effort to uphold the appealed order, alternatively argues petitioners are estopped from contending the appeal must be dismissed under RCW 28B.19.150 because of Rust's failure to comply with RCW 28B.19.110. Rust seeks thereby to bypass the jurisdictional requirements in both statutes. Petitioners, disagreeing, contend equitable estop-

pel is inapplicable because missing here is *justifiable* reliance by Rust on Dean Ross' opinions and the silence of the assistant attorney general concerning the legal steps required to protect Rust's right to judicial review. We agree with petitioners that estoppel is inapplicable because of the absence of justifiable reliance. In addition, estoppel is unavailable because its purpose here is to confer subject matter jurisdiction otherwise not existing upon the court below. We first discuss the requirement of justifiable reliance.

■ Mere reliance upon an admission, statement, act, or silence is not enough to create estoppel. The reliance must be justifiable. *Leonard v. Washington Employers, Inc.*, 77 Wn.2d 271, 280, 461 P.2d 538 (1969), after citing earlier cases to the same effect, states:

> Not all those who rely upon another's conduct or statements may raise an estoppel. Rather, it is only those who have a *right to rely* upon such acts or representations.

Rust relies on *Rand v. Andreatta*, 60 Cal. 2d 846, 389 P.2d 382, 36 Cal. Rptr. 846 (1964), and *Bruce v. Jefferson Union High School Dist.*, 210 Cal. App. 2d 632, 26 Cal. Rptr. 762 (1962), to support his position on estoppel. These cases involve claimed estoppel of a governmental entity to assert untimely compliance with a nonclaim statute and are distinguishable. Basically they are explainable as cases of justifiable reliance upon representations made by a government agent to an uneducated woman in one case and a minor child in the other, neither represented by counsel when the representations were made: Furthermore, the estoppel in *Rand* and *Bruce*, unlike that in the instant case, was not for the purpose of enabling a court to entertain subject matter jurisdiction it otherwise did not possess. *Shafer v. State*, 83 Wn.2d 618, 521 P.2d 736 (1974), decided since this appeal was argued, also involved a claimed estoppel against a governmental entity—the State—to rely on a nonclaim statute. Shafer does not abandon the necessity for justifiable reliance to raise an estoppel. The four-judge plurality opinion and the two-judge dissenting opinion disagreed on the application of the doctrine of justifiable reliance in that case.

Because there is no majority opinion in *Shafer*, it cannot control the disposition of this appeal even if it were otherwise applicable.

The facts here make no case for justifiable reliance. There is no claim the college or the State had any duty to advise Rust concerning the steps he should take to protect his right to judicial review. Rust's counsel in oral argument conceded that neither Dean Ross nor the assistant attorney general had any duty to advise Rust on the legal steps to be taken. Rust's counsel argues, however, that once Dean Ross undertook to answer questions asked by Rust or his acting counsel, or both, it was Dean Ross' duty to answer correctly; that, in answering incorrectly, he violated that duty so as to create an estoppel against petitioners. We do not agree because, "absent fraud or misrepresentation, estoppel runs in favor only of those who have reasonably relied on another's conduct or declarations." *Leonard v. Washington Employers, Inc., supra* at 281.

Dean Ross' answers must be considered in light of all the facts in determining whether estoppel arises. Dean Ross' legal opinions (the only affirmative statements argued in Rust's brief on appeal) were those of a layman with no authority from the college or the State to give such opinions and indeed with no duty to give them. The showing was insufficient to overcome the presumption that Dean Ross acted honestly and in good faith and with no intention to mislead Rust. Similarly, the assistant attorney general had neither authority from the college or the State to give legal advice to Rust, and had no duty to do so; accordingly, his silence cannot be considered as an intention to mislead Rust. Both Dean Ross and the assistant attorney general had a right to assume Rust would rely upon and be guided by the advice of his own counsel and that the latter would give proper legal advice after reasonable checking against error. It fairly appears that Rust did rely on his counsel's advice—a conclusion at least implicit in the reasons given by the court in its "findings."

The facts described do not support a claim of justifiable

reliance. *State v. Northwest Magnesite Co.,* 28 Wn.2d 1, 24, 182 P.2d 643 (1947), states:

> It is . . . unfortunate that the commissioner . . . expressed his opinion . . . that the statutes in force were not applicable . . . However, such expression of opinion as to the law, the facts being equally well known to both parties, cannot preclude the state from asserting the true effect of the statutes . . . *Turner v. Spokane County,* 150 Wash. 524, 273 Pac. 959.

*See also American Bank & Trust Co. v. Trinity Universal Ins. Co.,* 251 La. 445, 205 So. 2d 35 (1967); *Parsons v. Department of Transp.,* 74 Misc. 2d 828, 344 N.Y.S.2d 19 (1973); *Ryan v. Lumbermen's Mut. Cas. Co.,* _____ Tenn. _____, 485 S.W.2d 548 (1972); *Rhodes v. Owens,* 101 Wash. 324, 172 P. 241 (1918); *Palmer v. Shields,* 71 Wash. 463, 128 P. 1051 (1913).

▋ It is true Rust's acting counsel was not a fully licensed attorney when she furnished services to Rust on behalf of Northwest Washington Legal Services. That fact is not controlling here. Even had she been a mere uninformed layman practicing law, she would have been subject to the same standard of care and competence as is a licensed attorney. *See Burien Motors, Inc. v. Balch,* 9 Wn. App. 573, 577-78, 513 P.2d 582 (1973). She was, however, a legal intern, following prior substantial legal training. APR 9(B). Her training was such that by June 29, 1973, she had become staff attorney for Northwest Washington Legal Services.

▋ We next consider whether estoppel is available in light of its purpose here. Estoppel, as against an individual or government entity, cannot be used for the purpose of conferring subject matter jurisdiction upon a court. *Wesley v. Schneckloth,* 55 Wn.2d 90, 93-94, 346 P.2d 658 (1959), states:

> A constitutional court cannot acquire jurisdiction by agreement or stipulation. Either it has or has not jurisdiction. If it does not have jurisdiction, any judgment entered is void *ab initio* and is, in legal effect, no judg-

ment at all. Jurisdiction should not be sustained upon the doctrine of estoppel . . .

*Summers v. Superior Court,* 53 Cal. 2d 295, 347 P.2d 668, 1 Cal. Rptr. 324, 326 (1959), states the general rule to be "jurisdiction over the subject matter cannot be conferred by consent, waiver or estoppel." *See In re Puget Sound Pilots Ass'n,* 63 Wn.2d 142, 385 P.2d 711 (1963); *Miles v. Chinto Mining Co.,* 21 Wn.2d 902, 153 P.2d 856, 156 P.2d 235 (1944); *Keithley v. Civil Serv. Bd.,* 11 Cal. App. 3d 443, 89 Cal. Rptr. 809 (1970); *In re Rogers,* 243 Mich. 517, 220 N.W. 808 (1928); *James v. Kennedy,* 174 Tenn. 591, 129 S.W.2d 215 (1939). *See generally* 21 C.J.S. *Courts* § 108 (1940).

We cannot disregard the jurisdictional appeal requirements of RCW 28B.19.110 and the limitations on court jurisdiction contained in RCW 28B.19.150. Were we to do otherwise, subject matter jurisdiction would not be fixed by statute; it would be fixed by the conduct of individuals acting independently of the court. Such a result would invite both uneven application of the statute and raise serious problems in determining when RCW 28B.19.150 applies. In the absence of an estoppel, the court must comply with the clear and mandatory requirements of RCW 28B.19.110 and .150 lest it violate the constitutional doctrine of separation of powers.

Reversed with directions to grant petitioners' motion for dismissal.

SWANSON, C.J., and WILLIAMS, J., concur.

Petition for rehearing denied July 22, 1974.

Review denied by Supreme Court October 10, 1974.