[No. 26228-6-III.   Division Three.   April 29, 2008.]

JOSHUA RULAND ET AL., *Appellants*, v. THE DEPARTMENT OF SOCIAL AND HEALTH SERVICES, *Respondent*.

266

*Kevan T. Montoya* and *Sara L. Watkins* (of *Velikanje Halverson, PC*) for appellants.

*Robert M. McKenna, Attorney General,* and *Thomas W. McGirk, Assistant,* for respondent.

¶1 Schultheis, C.J. — Janet and Joshua Ruland were foster parents of a two-year-old boy and his infant sister. The Department of Social and Health Services (DSHS) found Ms. Ruland negligent after the boy scratched and bit his sister. DSHS subsequently denied the Rulands' application to relicense their foster home. The Rulands timely appealed both the neglect and licensing matters. During a prehearing conference, the assistant attorney general indicated that the neglect and licensing issues would be joined in the event the neglect finding was upheld. Later, DSHS upheld the neglect finding. The Rulands failed to file a second request for review within 30 days as required by RCW 26.44.125(4) because they believed the matter had already been combined with the licensing issue. However, on the day of the hearing, which was one day after the filing deadline expired, the assistant attorney general moved to dismiss based on the Rulands' failure to file an appeal. The administrative law judge (ALJ) denied the motion. DSHS appealed to the DSHS Board of Appeals (Board). The Board reversed the ALJ and the superior court affirmed. The superior court ruled that the filing requirement was a jurisdictional prerequisite; therefore, the office of administrative hearings (OAH) lacked jurisdiction to hear the neglect matter.

¶2 The Rulands appeal on four grounds. They argue that (1) their substantial compliance with RCW 26.44.125(4) satisfied the jurisdictional requirement, (2) the ALJ had the authority to join the neglect and licensing issues, (3) due process requires that they receive a hearing on the merits,

and (4) DSHS is equitably estopped from challenging OAH's jurisdiction.[1] We agree and reverse and remand.

## FACTS

¶3 During August 2005, the Rulands had two foster children in their care, a two-year-old boy and his one-month-old sister. At about 8:30 p.m. on August 9, Ms. Ruland put the boy to bed and left the infant sleeping on the living room floor while she went outside to mow her lawn. When Ms. Ruland returned to the living room about 30 minutes later, the infant was crying and her brother was positioned over her. She noticed bruises on the infant's face, a bite mark on the head, and scratches on the upper body. The Rulands took the child to an emergency room, where it was determined that her injuries were superficial. The Rulands advised DSHS of the incident. DSHS conducted an investigation of possible child abuse/neglect.

¶4 On October 13, 2005, DSHS's child protective services (CPS) informed Ms. Ruland that the allegation of negligent treatment was founded. The letter outlined the specific procedure for review. The Rulands timely submitted the review form.

¶5 During this time, the Rulands moved to a new address, requiring renewal of their foster home license. On October 28, DSHS's licensing division informed the Rulands that their application for a license was denied based on the founded neglect finding. On November 2, the Rulands' attorney objected to the license denial by a letter to a CPS supervisor, which referenced the Rulands' objection to the neglect finding: "[W]e deny any and all allegations of Negligent treatment or maltreatment of the foster children that were in their care under your program. We feel that the founded findings are not based upon anything the Rulands did that was negligent or indicative of mal-

---

[1] We do not reach the Rulands' due process argument because we reverse on other grounds.

treatment. We seek a review." Administrative Record (AR) at 141.

¶6 On November 2, counsel for the Rulands also sent a notice of request for review to DSHS regarding the child neglect finding and a letter to OAH requesting a hearing on the licensing denial. Trial counsel also spoke with a CPS supervisor, who advised him that the neglect and licensing issues could be combined at one hearing.

¶7 During a prehearing conference on December 13, the parties discussed the consolidation of the neglect and licensing issues in the event DSHS upheld the founded finding of neglect. The following exchange between the ALJ and the parties occurred:

[ALJ]: Now, is this a licensing matter, or is this a CAPTA [Child Abuse Prevention and Treatment Act] matter, or is this both?

[Assistant Attorney General (AAG)]: . . . I understand it's a licensing matter. I'm not sure where the CAPTA matter is in the process.

. . . .

[Appellants]: From our perspective, it's a licensing matter.

. . . .

[ALJ]: Well, there's a foster care license is involved. It also appears that there is a Child Abuse and Prevention Treatment Act finding.

[Appellants]: Yeah.

[ALJ]: Is that finding contested?

[Appellants]: Yeah.

. . . .

[ALJ]: . . . I'm looking at a letter of October 13th, which was the CAPTA letter . . . .

. . . .

[ALJ]: . . . [H]as an appeal been filed with respect to that letter?

[AAG]: That is my understanding.

[ALJ]: Okay. And has a review been completed?

[AAG]: . . . I have not heard that it has been.

[Appellants]: Nor have I, Judge.

[AAG]: Which leads me to think that it has not been.

[ALJ]: Okay. So obviously . . . that's gonna have to be joined with this matter unless [the] Department changes its position.

[AAG]: I would assume that would be the case.

Clerk's Papers (CP) at 50-52. During this conference, the parties also agreed to a February 14, 2006, hearing date.

¶8 On December 29, 2005, DSHS sent a letter to Ms. Ruland informing her that the original founded finding of neglect was upheld. The letter indicated the steps for contesting the finding and emphasized the 30-day filing deadline.

¶9 The Rulands received the letter on January 13, 2006. Assuming the appeal of the neglect finding had been joined with the licensing issue, the Rulands did not mail a second written request for a hearing.

¶10 At the start of the February 14 hearing, the assistant attorney general moved to dismiss the Rulands' challenge of the neglect finding based on their failure to request review of the second founded neglect finding within the required 30 days. This failure, she argued, deprived the OAH of jurisdiction to hear it. The Rulands' attorney explained that he had not filed a second appeal because he believed the licensing and neglect matters had already been joined.

¶11 The ALJ was troubled by the State's motion. Noting that the State had actual notice that the Rulands contested the neglect finding and had previously agreed to join the licensing and neglect issues, the ALJ questioned the assistant attorney general's tactics:

[ALJ]: --wouldn't ethics require you, [AAG], to call . . . and say, "Hey . . . it's been 3 weeks here. We don't have a request for hearing. How come we don't have a request for hearing on this CAPTA matter?"

[AAG]: Your Honor, I don't think it's my responsibility to keep [counsel's] calendar--

. . . .

[ALJ]: --I mean doesn't the Department want these matters to be heard on the merits? You don't want to win on a -- on a technicality on a procedural issue? Or do you?

Audio Transcription (AR) at 391. The assistant attorney general reiterated that she was not responsible for appellate procedures or advising parties of deadlines.

¶12 The ALJ concluded that he could hear the neglect issue because it had been consolidated with the licensing matter and DSHS had long known that it was contested. Citing a Washington Administrative Procedure Act (APA) rule, chapter 34.05 RCW, the ALJ found that the Rulands' request for review of the licensing issue also constituted a request for a hearing on the neglect issue, stating, "[i]t is technically correct to observe that the request preceded the final finding. As provided in RCW 34.05[2] the initial request was requesting current review and also [a] hearing which would become available in the future." AR at 83.

¶13 The case proceeded to a hearing on the merits. The ALJ ultimately concluded that the CPS incident did not constitute child neglect and ordered reinstatement of the Rulands' foster home license.

¶14 DSHS appealed the ALJ's order to the Board of Appeals. The Board reversed the ALJ's order, finding that Ms. Ruland's failure to follow proper appeal procedures deprived the ALJ of jurisdiction to hear the neglect finding. The Board then denied the Rulands' application for relicensure, noting that a founded finding of neglect mandates license revocation. The Rulands' petition for reconsideration was denied.

¶15 The superior court upheld the Board's decision, agreeing with the Board that timely filing of an appeal was a jurisdictional prerequisite. The Rulands appeal the superior court's decision.

---

[2] Section 34.05.419(3) of the APA provides in part: "If the application seeks relief that is not available when the application is filed but may be available in the future, the agency may proceed to make a determination of eligibility within the time limits provided in subsection (1) of this section."

## ANALYSIS

*Standard of Review*

¶16 In reviewing administrative action, this court sits in the same position as the superior court, applying the standards of the APA directly to the record before the agency. *Tapper v. Employment Sec. Dep't*, 122 Wn.2d 397, 402, 858 P.2d 494 (1993); *Utter v. Dep't of Soc. & Health Servs.*, 140 Wn. App. 293, 299, 165 P.3d 399 (2007). There are a number of statutory bases for reversing an agency order, including: (1) the agency erroneously interpreted or applied the law, or the order (2) is inconsistent with a rule of the agency, (3) is not supported by substantial evidence, or (4) is arbitrary or capricious. RCW 34.05.570(3); *Tapper*, 122 Wn.2d at 402. The party challenging the government action bears the burden of proof. RCW 34.05.570(1)(a); *Heidgerken v. Dep't of Natural Res.*, 99 Wn. App. 380, 384, 993 P.2d 934 (2000).

*Jurisdiction*

¶17 The essential question before us is whether the Rulands' failure to submit a written request for review of DSHS's second founded finding of neglect deprived the OAH of jurisdiction to hear the issue. DSHS procedures are governed by chapter 34.05 of the APA, chapter 388-02 WAC, and RCW 26.44.100 and .125. *See* WAC 388-15-109. RCW 26.44.125(1)-(4) outlines the rights of alleged perpetrators of child abuse/neglect to review a neglect finding and specifies the procedure for contesting such a finding. First, an alleged perpetrator has 20 days from receipt of written notice that he or she has been named an alleged perpetrator in a founded report of abuse or neglect to request a review of the finding. RCW 26.44.125(2). Next, upon receipt of a written request for review, DSHS reviews the finding and notifies the alleged perpetrator in writing of the agency's determination. RCW 26.44.125(3).

¶18 If, following agency review, the report remains founded, the alleged perpetrator may request an adjudica-

tive hearing to contest the finding. RCW 26.44.125(4). RCW 26.44.125(4) states that this request must be filed within 30 calendar days after receiving notice of the agency decision. *See also* WAC 388-15-105(3). Failure to comply with this 30-day deadline results in forfeiture of the right to agency or judicial review of the finding. RCW 26.44.125(4).

¶19 Here, Ms. Ruland received a letter informing her of the unchanged finding of neglect on January 13, 2006. Under RCW 26.44.125(4), her request for an appeal would have to be received by February 13, 2006. For the reasons discussed above, this deadline was not met. However, the Rulands first argue that despite their failure to strictly comply with RCW 26.44.125(4), OAH had jurisdiction to hear the neglect matter. We address their arguments below.

*Substantial Compliance*

¶20 First, the Rulands argue that they "substantially complied with the notice and written review requirements of RCW 26.44.125, and thus invoked the court's jurisdiction to hear the neglect matter." Br. of Appellants at 11. They assert their substantial compliance is evidenced by (1) their submission of a notice of review of the relicensure denial, which referenced the neglect finding; (2) their letters to OAH and DSHS in which they noted their objection to the neglect finding and requested review; and (3) the ALJ's decision to join the neglect and licensing issues at the prehearing conference. Relying on *In re Saltis*, 94 Wn.2d 889, 895, 621 P.2d 716 (1980), the Rulands point out that the underpinning of the substantial compliance doctrine is actual notice and that DSHS had such notice of their intent to appeal the neglect finding.

¶21 DSHS counters that the Rulands did not substantially comply with the procedural requirements of RCW 26.44.125, arguing that substantial compliance requires some degree of actual compliance. It points out that the first request for agency review and the joinder discussion occurred before agency review was completed on the neglect issue. Therefore, any discussions were merely speculative

and do not constitute substantial compliance with statutory filing requirements.

¶22 Under some circumstances, jurisdictional requirements may be satisfied by substantial compliance. *Crosby v. Spokane County*, 137 Wn.2d 296, 971 P.2d 32 (1999). "Substantial compliance" is defined as " 'actual compliance in respect to the substance essential to every reasonable objective of [a] statute.' " *City of Seattle v. Pub. Employment Relations Comm'n*, 116 Wn.2d 923, 928, 809 P.2d 1377 (1991) (*PERC*) (alteration in original) (quoting *In re Habeas Corpus of Santore*, 28 Wn. App. 319, 327, 623 P.2d 702 (1981)). It is assessed on a case by case basis. *Saltis*, 94 Wn.2d 889. Generally, "noncompliance with a statutory mandate is not substantial compliance." *Crosby*, 137 Wn.2d at 302. In cases where courts have found substantial compliance, there has been actual compliance with the statute, but with minor procedural faults. *Cont'l Sports Corp. v. Dep't of Labor & Indus.*, 128 Wn.2d 594, 602, 910 P.2d 1284 (1996).

¶23 For example, in *Saltis*, a petition for appeal of a Board of Industrial Insurance Appeals decision was delivered to the Department of Labor and Industries, not to the director of the department, as required by statute. The court found that the appellant substantially complied with the service requirement because the department director received actual notice. It reasoned that procedural rules are aimed at safeguarding timeliness, notice, and appropriate forum: "To this extent, the legislature was not unwilling to allow judicial review of a subject otherwise removed from court jurisdiction if appeal is promptly requested." *Saltis*, 94 Wn.2d at 896 (emphasis omitted); *see also Vasquez v. Dep't of Labor & Indus.*, 44 Wn. App. 379, 722 P.2d 854 (1986) (service on employer's attorney rather than employer was deemed substantial compliance).

¶24 The State points to *PERC*, 116 Wn.2d 923, where the court distinguished between defects in service and the failure to comply with deadlines. In that case, the city missed a deadline for filing a petition for review of a PERC

decision. Labor unions filed motions to dismiss the city's appeal based on its failure to meet the 30-day time limit for review of PERC decisions. The court rejected the city's substantial compliance argument, noting, "It is impossible to substantially comply with a statutory time limit in the same way [as a service requirement]. It is either complied with or it is not." *PERC*, 116 Wn.2d at 928-29.

¶25 However, *PERC* is distinguishable. In this case, DSHS had actual notice from the outset that the Rulands challenged the neglect finding; whereas in *PERC*, the commission received no such notice prior to the filing deadline. We find this distinction critical because the foundation of substantial compliance is meeting the basic purposes of the statute, which include timeliness, appropriate forum, and notice. *Saltis*, 94 Wn.2d at 896; *Crosby*, 137 Wn.2d at 303. In this case, these statutory purposes were met.

¶26 First, the Rulands' failure to request review did not delay proceedings. By the time the neglect finding was upheld, OAH, the proper forum, had already scheduled a hearing to consider the neglect matter and the parties were prepared to proceed at the February hearing, and did so. Most importantly, DSHS was on actual notice that the neglect finding was contested. The Rulands' request for review of the licensing matter referenced the neglect finding, counsel sent letters to DSHS indicating the Rulands' objection to the neglect finding, and the parties agreed on the record that the neglect finding, if upheld, would be considered at the hearing on the licensing issue.

¶27 All of these acts were more than adequate substitutes for the filing requirement. In view of these circumstances, we fail to see any policy reason to require a second notice of appeal of the neglect finding. We therefore conclude that the Rulands' substantial compliance with the notice requirements of RCW 26.44.125(4) satisfied jurisdictional requirements.

*Court's Authority To Join Issues*

¶28 The Rulands next assert that the ALJ had the authority under agency rules to join the neglect and licensing issues at the prehearing conference. They point to OAH's model rules of procedure, which provide that if there are multiple adjudicative proceedings involving common issues, "the presiding officer may, in his or her discretion, consolidate the proceedings." WAC 10-08-085. We agree.

¶29 The model rules authorize the ALJ to rule on procedural matters. WAC 10-08-085, -130. Under DSHS's hearing rules, the ALJ may "clarify the issues to be decided during the hearing" and "[d]ecide whether a party has a right to a hearing." WAC 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(1), -0215(2)(m). The ALJ is required to apply the DSHS rules adopted in the Washington Administrative Code (WAC). WAC 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. Finally, as indicated above, the APA permits an agency to decide an issue before relief is available. RCW 34.05.419.

¶30 All of these provisions support the authority of the ALJ to join the appeal of the neglect finding with the licensing issue. Because the neglect and licensing matters were inextricably connected, the ALJ consolidated the matters in the event the neglect finding remained founded upon review. This was entirely within his statutory authority to decide procedural matters, and clarify and consolidate issues, including those where relief is not yet available.

*Equitable Estoppel*

¶31 Finally, the Rulands argue that DSHS is equitably estopped from challenging OAH's jurisdiction because the assistant attorney general and a CPS supervisor represented that the neglect and licensing issues would be combined in one hearing. The Rulands argue that they detrimentally relied upon these representations. They point out, "To not hear the merits of the case after DSHS represented that the matters would be heard at the same time, and when the issues are so intertwined that the licensing issue directly hinged on whether there was ne-

glect in the home, does not do justice for Mrs. Ruland or the Ruland family." Br. of Appellants at 26.

¶32 Under certain circumstances, where justice so requires, the application of equitable estoppel against a government agency may be warranted. *Kramarevcky v. Dep't of Soc. & Health Servs.*, 122 Wn.2d 738, 743-44, 863 P.2d 535 (1993). This relief is of an extraordinary nature and will usually not be applied unless the equities are clearly balanced in favor of the party seeking relief. *Id.* at 744. For the reasons discussed below, we conclude that this is a case where application of the doctrine is warranted.

¶33 A party asserting equitable estoppel against a state agency must show evidence of (1) an admission, statement, or act inconsistent with its earlier claim; (2) reliance on the statement; (3) injury to the relying party if the agency were allowed to contradict or repudiate its earlier admission; (4) the necessity of estoppel to prevent a manifest injustice; and (5) no impairment of government functions if estoppel is applied. *Id.* at 743-44. Agency rules also provide for estoppel against DSHS. *See* WAC 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.

¶34 All of these factors are met here. First, the assistant attorney general indicated that the neglect issue would be consolidated with the licensing issue at the February 14 hearing by stating she "assume[ed] that would be the case" in the event DSHS upheld the initial neglect finding. CP at 52. Additionally, a CPS supervisor told the Rulands' attorney that all issues could be consolidated. The Rulands relied on these representations and did not file a second request for review. Then, just one day past the filing deadline, the assistant attorney general moved to dismiss, repudiating her previous agreement.

¶35 Relying on *Rust v. Western Washington State College*, 11 Wn. App. 410, 523 P.2d 204 (1974), DSHS argues that estoppel does not apply here because the Rulands' reliance on DSHS's representations was unreasonable. Specifically, it contends that the Rulands had the duty to question the inconsistency between the statutory filing requirements and DSHS's representations.

¶36 However, *Rust* is distinguishable. In that case, a student claimed that his attorney's reliance on a college dean's and an assistant attorney general's representations about the Department of Education's (DOE) procedural rules resulted in his failure to meet a statutory deadline for appealing a college administrative decision terminating his participation in a graduate program. Division One of this court held that counsel's reliance on these representations was not reasonable because neither the college nor the state had any duty to advise Mr. Rust of the DOE's procedural steps for judicial review. *Rust*, 11 Wn. App. at 417. It noted that the college dean was a layman with no authority from the college or state to give legal opinions, and that the assistant attorney general had simply remained silent.

¶37 In contrast, the assistant attorney general here did not remain silent. She indicated on the record that the neglect and licensing issues would be joined. And unlike *Rust*, the statements in this case were made by people with direct ties to DSHS and knowledge of DSHS procedures, whereas the college dean in *Rust* had no such link to the DOE or understanding of its procedural rules. We therefore reject DSHS's position and conclude that the Rulands' reliance on its representations was reasonable.

¶38 Applying the remaining estoppel factors, we conclude that the Rulands were injured as a result of DSHS's statements and that estoppel is necessary to prevent a manifest injustice. If DSHS's argument prevails, a couple who came forward to help the state care for foster children will lose its foster home license. Estoppel is necessary to prevent this injustice.

¶39 Finally, as to the fifth factor, the application of estoppel cannot be said to impair DSHS's functions as DSHS received timely notice of the Rulands' objection to the neglect finding and the matter has already been heard on the merits. Under these circumstances, estoppel is proper.

¶40 As a final matter, we note DSHS's assertion that estoppel against the government cannot be used to confer subject matter jurisdiction upon a court. While this is an

accurate statement of the law,[3] we reject DSHS's argument. Estoppel is not conferring jurisdiction here. The OAH never lacked jurisdiction to hear the neglect issue. We have already concluded that the Rulands' substantial compliance with filing procedures satisfied jurisdictional requirements and the ALJ had the authority under agency rules to combine the neglect and licensing issues and properly did so. Estoppel is properly applied here to prevent injustice.

## CONCLUSION

¶41 We conclude that the Rulands' substantial compliance with the notice requirements of RCW 26.44.125(4) provided OAH with jurisdiction to hear the case. Furthermore, under DSHS's own hearing rules, the ALJ had the authority to join the licensing and neglect issues. Finally, DSHS is equitably estopped from contesting the court's jurisdiction.

¶42 We therefore reverse and remand for proceedings consistent with this opinion.

BROWN, J., and THOMPSON, J. PRO TEM., concur.

---

[3] *See* 2 AM. JUR. 2D *Administrative Law* § 3331; *Leschner v. Dep't of Labor & Indus.*, 27 Wn.2d 911, 185 P.2d 113 (1947) (estoppel cannot confer subject matter jurisdiction).