[No. 20245.  Department One.  January 8, 1927.]

CLAUD NAFUS, *Respondent*, v. DEPARTMENT OF LABOR
AND INDUSTRIES, *Appellant*.[1]

[1] MASTER AND SERVANT (121-2)—REMEDIES UNDER WORKMEN'S
COMPENSATION ACT—APPEAL—TIME OF TAKING.  An appeal from
the decision of the industrial insurance commission disallowing
a claim must be taken within twenty days, or the superior
court will have no jurisdiction of the appeal; and one who
receives a notice by mail and was not incompetent to under-
stand the nature of the claim cannot claim that he had no
notice because he did not read the letter.

[2] APPEAL (153, 156)—PRESERVATION OF GROUNDS—NECESSITY OF
MOTION FOR NEW TRIAL—PROCEEDINGS AT TRIAL.  Where the
superior court had no jurisdiction of an appeal denying a
claim under the industrial insurance commission, and objection
was made and overruled, appeal lies from the decision entered
by the superior court allowing the claim without the necessity
of any motion for a new trial.

Appeal from a judgment of the superior court for
Whatcom county, Brown, J., entered May 5, 1926, in
favor of the plaintiff, on appeal from a decision of the
department of labor and industries rejecting a claim
for compensation under the workmen's compensation
law.  Reversed.

*The Attorney General* and *M. H. Wight, Assistant,*
for appellant.

*R. W. Greene,* for respondent.

MAIN, J.—On July 7, 1924, the respondent Claud
Nafus was injured while engaged in an extra-hazard-
ous employment.  Shortly thereafter, he presented a
claim to the appellant, the department of labor and in-
dustries of the state of Washington, for compensation.
For a number of months he was paid a certain sum
per month.  The department, having some doubt

[1]Reported in 251 Pac. 877.

whether the serious condition of the respondent was the result of the accident or disease, caused a further examination to be made and X-ray photographs of the bone structures of his back and hips taken. After this further examination, the department notified the respondent that he would have an opportunity to present any further evidence that he might have in support of his claim that his condition was the result of the accident. In response to this, no other evidence was supplied. Shortly after the injury, the respondent went to the hospital at Sumas, Washington, where he remained until the month of October, 1925. On March 24, 1925, the department wrote him that his claim was being closed owing to the fact that his then condition was not due to the accident of July 7, 1924. The letter stated that notice to this effect would go forward in the course of a few days. On April 23, 1925, the respondent was notified by letter that the claim had been closed because "condition not result of accident". These letters the respondent claims not to have received, though he received the other letters sent by the department. The records of the department with reference to this claim recite: "Close as paid. Condition not result of an accident. A. D. Sheldon. Apr. 23, 1925." On September 14, 1925, the department, replying to a letter which it had received from the appellant, stated:

"Replying to your recent letter, will say that your claim was closed and paid on April 23, 1925, and a notice to that effect went forward to you at that time.

"This action was taken following an investigation of your case which developed that your condition was not due to your alleged injury of July 7, 1924."

With reference to this letter the respondent testified:

"I did not get this letter which has just been read. I got no notice while at Sumas why the state had

*stopped my pay.* I did not know the state would not pay me any more money until some time after the payments had stopped. It was probably a couple of months after I received my last warrant. I just cannot remember when I first learned that the department refused to pay further compensation and closed the claim. Mr. Hammond and some other man of the state department came out to Sumas while I was in the hospital. One of these men asked if I had received a letter. He looked at the letter and then placed it back in my robe which was hanging beside the bed. I don't know what the letter contained. I knew the letter was from Olympia. One of the nurses opened it, but she did not tell me what it contained. I was in no condition to concern myself with the contents of the letter. I discussed the fact that the department had refused to pay me further compensation. I did not talk with these gentlemen about the contents of the letter. To the best of my memory, I first learned that the department refused to pay me further compensation during the winter. I employed Mr. Greene, my attorney, in October, 1925. I told him that the department had refused to pay me further compensation and asked him to see them when he was in Olympia in October."

With reference to the letter to which the respondent referred in his testimony, Ben F. Hammond, as assistant supervisor of the department testified:

"I saw Mr. Nafus at the hospital in Sumas about June 16 or 18, 1925. Mr. McGlynn, one of my deputies, was with me. I asked Mr. Nafus if he had received notice as to whether or not his claim had been closed. He said he was not receiving any money from the department and had not for some time. I asked him the reason why and he stated that he had received a letter advising him that his claim had been closed. He said that the letter was in his bathrobe and Mr. McGlynn, at his request, got the letter out and handed it to me and I read it. I said to Mr. Nafus that the reason the state department had stopped his compensation and notified him to that effect was that it believed that his

condition was not the result of an accident, and he said 'I realize that'."

This testimony the respondent did not deny.

On January 8, 1926, the respondent filed a petition with the department setting up his injuries and his inability to care for himself, stating that he had received no notice of the action of the department in closing the claim, and asked that the order of the department be vacated. The request to vacate the order closing the claim was denied, and the appellant took an appeal to the superior court. There the case was tried to a jury. The verdict consisted in the answering of interrogatories submitted. Based upon the answer to the interrogatories, the trial judge entered a judgment directing the department to classify the respondent as an injured workman with a resultant total disability and to pay and discharge fees for hospital and medical attendance. From the judgment thus entered the department appealed.

[1] At the conclusion of the respondent's evidence and also at the conclusion of all of the evidence, the department challenged the jurisdiction of the court and moved for a dismissal of the action, because the appeal had not been taken within the time limited by law. Rem. Comp. Stat., § 7697 [P. C. § 3488], among other things, provides that no appeal from the department to the superior court shall be entertained

" . . . unless notice of appeal shall have been served by mail or personally upon some member of the commission within twenty days following the rendition of the decision appealed from and communication thereof to the person affected thereby".

It was incumbent upon the respondent to prove that he had taken an appeal from the department within the time fixed by the statute. In 11 Cyc. 696, it is said:

"A court of special, limited, or inferior jurisdiction must by its record show all essential or vital jurisdictional facts of its authority to act in the particular case, and in what respect it has jurisdiction. This rule also applies to jurisdiction over special statutory proceedings exercised in derogation of, or not according to, the course of the common law. So the necessary jurisdictional facts must affirmatively appear by averment and proof to bring the case within the jurisdiction of such court."

The controlling question is whether the appeal was prosecuted within time and this depends upon whether notice of the closing of the claim on April 23, 1925, was communicated to the respondent. The testimony of the respondent above set out shows that he received the letter of April 23, 1925, and that it was in the pocket of his bathrobe that hung at the side of his bed. He says that the nurse read it and its contents were not communicated to him. Mr. Hammond testified that when he asked the respondent with reference to receiving a letter that he said that the letter was in his bathrobe. The undisputed evidence, then, is to the effect that the letter was received and placed in the pocket of the respondent's bathrobe which hung at the side of his bed, and he knew that it was there. He also knew that the letter was from Olympia. The fact that the respondent says that he did not read the letter and did not know its contents is not controlling. The department had done all it was required to do in making "communication" of its decision in closing the claim to the party affected thereby. There is no evidence from which it could be found that the respondent was not competent to understand the nature of the communication at the time. It follows that the appeal was not taken within twenty days after notice of the decision of the department closing the claim had been communicated to the respondent.

The subsequent filing of a petition to open the claim and then appealing from the denial to so do does not bring the appeal within the requirements of the statute.  There is no provision in the law for a petition of this kind and, if such a petition could be entertained and then an appeal prosecuted from its denial, it would operate to defeat the limitation placed in the statute by the legislature.

[2]   There is some contention in the respondent's brief to the effect that the department was not entitled to appeal from the judgment entered, because of its failure to make a motion for a new trial after the entry thereof.  The question of the jurisdiction of the trial court was raised at the conclusion of the respondent's testimony by motion and also at the conclusion of all the evidence.  The court had an opportunity to and did pass upon the question.  It was not necessary, therefore, for a motion for a new trial to be made subsequent to the entry of the judgment in order to permit the trial court to pass upon the question.

It follows that the judgment must be reversed, and the cause remanded with direction to the superior court to dismiss the proceeding.

TOLMAN, C. J., MITCHELL, and FULLERTON, JJ., concur.