[No. 43529.    En Banc.    October 16, 1975.]
FEDERICO RODRIGUEZ, *Appellant*, v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Respondent*.

*Nashem, Prediletto, Brooks & Schussler* and *William L. Halpin*, for appellant.

*Slade Gorton, Attorney General*, and *James D. Pack, Assistant*, for respondent.

HOROWITZ, J.—Appellant Federico Rodriguez appeals a judgment affirming a decision of the Board of Industrial Insurance Appeals that the board was without jurisdiction to hear the merits of an appeal from an order of the Department of Labor and Industries.

On July 25, 1969, appellant Rodriguez was injured while thinning apples for Sundquist Fruit and Cold Storage Company, Inc. On August 4, 1969, appellant filed an accident report with the Department of Labor and Industries alleg-

ing the occurrence of an industrial injury. The department allowed the claim and made the appropriate monthly payments. However, on October 21, 1971, the department mailed to appellant a copy of an order, dated October 14, 1971, closing his injury claim with a permanent partial disability award in the amount of $2,868.75. Accompanying the order was a schedule of payments showing that appellant was to receive $215 per month from November 21, 1971, through June 21, 1972, with a final payment of $148.75 to be paid on July 21, 1972. Also accompanying the closing order was a check, constituting the initial disability payment, in the amount of $1,093.15.

Appellant Rodriguez is an extreme illiterate. A farmworker of Mexican-American extraction, he speaks only Spanish. He does not write or read either Spanish or English. In his dealings with the department, appellant had relied upon the services of Dora Rodriguez, an interpreter. However, at the time he received the closing notice from the department, the interpreter was hospitalized and unable to interpret for him. At about the same time appellant received word that his mother in Texas was ill and was about to undergo surgery. He used the proceeds of the above-mentioned check from the department to purchase a car, and in early November 1971, left for Texas, notifying the department, through a doctor, of his change of address. Appellant remained in Texas until the latter part of April 1972. Upon his return he took the department order to his interpreter to have it explained to him and for the first time learned his claim had been closed. On May 25, 1972, appellant filed his notice of appeal from the closing order with the Board of Industrial Insurance Appeals.

The board granted the appeal subject to proof of timeliness. After hearing, the board determined the appeal was untimely because it was not filed within 60 days from the day the closing order was communicated to appellant as required by RCW 51.52.060. Appellant appealed to superior court. After trial, the court entered judgment affirming the decision and order of the board.

Two questions are presented: (1) whether appellant's notice of appeal was filed within the time limits prescribed in RCW 51.52.060, and (2) if not, whether appellant's extreme illiteracy excused the untimely filing.

RCW 51.52.060 provides:

> Any workman . . . aggrieved by an order, decision, or award of the [Department of Labor and Industries] must, before he appeals to the courts, file with the [Board of Industrial Insurance Appeals] and the director, by mail or personally, within sixty days from the day on which such copy of such order, decision, or award was *communicated* to such person, a notice of appeal to the board.

(Italics ours.) Appellant contends the word "communicated" denotes some actual understanding on the part of the workman of the nature of the order. Accordingly, appellant argues the 60-day period described by RCW 51.52.060 did not commence to run until appellant was informed by his interpreter that the order he had received from the department was an order closing his claim.

Respondent contends the word "communicated" in the statute means communicated by serving a copy of the order upon the interested party. *Nafus v. Department of Labor & Indus.*, 142 Wash. 48, 251 P. 877 (1927). Furthermore, respondent argues the use of the statutory language "copy of such order" is more specific than the word "communicate" without such language, especially in the context of RCW 51.52.050 requiring the defendant to serve a copy of its order upon affected parties; accordingly, the word "communicated" in RCW 51.52.060 makes it clear the time for appealing begins to run when the copy is delivered or received. On this view of the matter, appellant's notice of appeal was untimely filed because it was not filed within 60 days of the receipt of the closing order.

In the instant case, appellant did not know what was in the order because he was unable to read it. The order was written in English, and, although appellant could understand Spanish, he could neither read nor write either English or Spanish. In *Nafus v. Department of Labor & Indus.*,

*supra,* the department wrote to the workman on March 24, 1925, informing him his claim was being closed because his then condition was not the result of the accident for which the claim was made. On April 23, 1925, the workman was notified by letter the claim was closed because "condition not result of accident." The workman testified he received neither letter. On September 14, 1925, the department, replying to a letter received from the workman, again notified him that a notice that his claim was closed and paid had previously been sent to him, following an investigation which revealed his condition was not due to the alleged injury which formed the basis of his claim. The workman testified he did not get the letter. The evidence showed he had received the April 23, 1925, letter but that it was placed in the pocket of his bathrobe which hung at the side of his bed. One of the nurses read it but did not tell the workman of its contents. He testified he was in no condition to concern himself with the contents of the letter. The court stated at page 52:

> The testimony of the respondent . . . shows that he received the letter of April 23, 1925, and that it was in the pocket of his bathrobe that hung at the side of his bed. He says that the nurse read it and its contents were not communicated to him. . . . The undisputed evidence, then, is to the effect that the letter was received and placed in the pocket of the respondent's bathrobe which hung at the side of his bed, and he knew that it was there. He also knew that the letter was from Olympia. The fact that the respondent says that he did not read the letter and did not know its contents is not controlling. The department had done all it was required to do in making "communication" of its decision in closing the claim to the party affected thereby. There is no evidence from which it could be found that the respondent was not competent to understand the nature of the communication at the time. It follows that the appeal was not taken within twenty days after notice of the decision of the department closing the claim had been communicated to the respondent.

In the instant case we are satisfied the word "com-

municated" contained in RCW 51.52.060 requires only that a copy of the order be received by the workman. Since appellant's notice of appeal was not filed within 60 days of the receipt of the closing order, the notice of appeal was not timely.

The remaining question is whether this is an appropriate case for the granting of equitable relief. Appellant contends the reason for his failure to file his notice of appeal within the 60-day limit provided for in RCW 51.52.060 was that the interpreter upon whom he had relied in his previous dealings with the department was ill and unavailable to him for purposes of reading and explaining the closing order and without the aid of her services he was incapable of understanding the nature of the order closing his claim. Accordingly, appellant seeks to be excused from strict compliance with the 60-day provision.

In *Ames v. Department of Labor & Indus.*, 176 Wash. 509, 30 P.2d 239, 91 A.L.R. 1392 (1934), this court held that Rem. Rev. Stat. § 7697, the statutory predecessor to the portion of RCW 51.52.060 relevant here, was not intended to allow the department to deal ex parte with a workman's claim and deny his claim unheard while he was known to be non compos mentis. The court explained at pages 513-14:

> The general policy of our laws is to protect those who are unable to protect themselves, and equitable doctrines grew naturally out of the humane desire to relieve under special circumstances from the harshness of strict legal rules. Our legislature has always been well advised of the uses and purposes of equity, and it would be abhorrent and contrary to established public policy to hold that the legislature intended by the limitations in the industrial insurance act to permit the department to deal *ex parte* with a workman's claim and deny his just rights unheard while he was known to be *non compos mentis*.
>
> In enacting this statute, the legislature must have had in mind that equity would relieve in all proper cases from the hardships which otherwise would occur in enforcing the strict letter of the statute.

Similarly, in *Nafus v. Department of Labor & Indus.*, *supra*

at 52, this court distinguished between a mere failure or refusal to read a letter from the department and a case where there would be "evidence from which it could be found that the respondent was not competent to understand the nature of the communication at the time."

There is case support for the view that illiteracy will not excuse failure to comply with provisions of workmen's compensation acts as to the giving of notice. *Jeffers v. Liberty Mut. Ins. Co.*, 115 Ga. App. 528, 154 S.E.2d 801 (1967); 100 C.J.S. *Workmen's Compensation* § 450(a), at 333 (1958). In *International Harvester Co. v. Industrial Comm'n*, 410 Ill. 543, 103 N.E.2d 109 (1951), the court held that where checks paid to an injured employee stated they were in payment of sickness benefits for disabilities not covered by workmen's compensation, the employee, who could not read, had a duty to have the check read to him in the exercise of due care for his own interest in preventing the running of the time in which he could claim compensation.

However, there is also support for the view that extreme illiteracy is "within the reach of the mental incompetency principle." 3 A. Larson, *Workmen's Compensation Law* § 78.46, at 113 (1973). Thus, in *Mirra v. Washburn Wire Co.*, 9 App. Div. 2d 973, 193 N.Y.S.2d 708 (1959), the court sustained an award for an employee hospitalized for coronary thrombosis suffered on the job, in spite of the fact the employee had filed his claim late. The reason given for the late filing was: "I had difficulty in speaking English and I didn't know I had to report . . ." The court found there was no prejudice to the employer and upheld the timeliness of the notice.

■ In our view, the same broad principles of equity applied in *Ames*, and at least impliedly recognized in *Nafus*, can be applied under the special circumstances here to relieve appellant from the hardships which otherwise would result from the enforcement of the strict letter of the notice provisions of RCW 51.52.060. It should be noted here that the instant case involves only an attempt by an

injured workman to appeal from an ex parte order of the department closing his injury claim. A report of the accidental injuries was made by the injured workman in a timely fashion, a full investigation thereof was conducted by the department, the claim was allowed and payments made thereon. No substantial prejudice will result to the department or the board from allowing appellant workman's appeal from the order closing his claim. Further, it is clear appellant was extremely illiterate and himself unable to ascertain or understand the nature and contents of the order communicated and the department knew or should have known of appellant's illiteracy at the time it closed his claim.[1]

Reversed.

STAFFORD, C.J., and FINLEY, ROSELLINI, HUNTER, HAMILTON, WRIGHT, and UTTER, JJ., concur.

BRACHTENBACH, J., concurs in the result.

---

[1]Two separate medical examination reports received by the department contained notations indicating appellant's interpreter was present during the respective examinations. One of the reports, prepared by Dr. Muzzall on October 9, 1970, and received by the department on October 28, 1970, stated that appellant's medical history was obtained through use of appellant's interpreter, while the other report, prepared by Dr. Lugar on August 3, 1971, and received by the department on September 8, 1971, specifically called attention to appellant's lack of education and knowledge of the English language. (Supp. Tr. 9-10).