[Nos. 16257–8–I; 16258–6–I.   Division One.   June 15, 1987.]

THE DEPARTMENT OF LABOR AND INDUSTRIES, *Appellant,* v.
METRO HAULING INCORPORATED, *Respondent.*

THE DEPARTMENT OF LABOR AND INDUSTRIES, *Appellant,* v.
INCO EXPRESS, INC., *Respondent.*

Kenneth O. Eikenberry, Attorney General, and Gregg Rodgers, Assistant, for appellant.

Philip A. Talmadge, William H. Beaver, and Karr, Tuttle, Koch, Campbell, Mawer & Morrow, for respondents.

THOMAS, J.*—This appeal arises out of efforts by the Department of Labor and Industries, appellant herein, to collect industrial insurance premiums from two private trucking carriers, Metro Hauling and Inco Express.

In 1982, appellant completed an audit of respondent Metro. The audit disclosed that Metro had exceeded the amount it could legally deduct from employee paychecks to satisfy its medical and pension premium obligations. Appellant then issued an "Order and Notice" to Metro pursuant to former RCW 51.52.050. The order and notice stated:

> Whereas, RCW 51.16.140 and RCW 51.32.073 provide for an employer to make deductions from the earnings of its workers of one–half the amount the employer is required to pay for medical benefits and supplemental pension assessment, and
> Whereas, this employer has exceeded those deductions on behalf of its workers in the amount of $31,249.07 for the period commencing April, 1, 1980 through March 31,

---

*This appeal was heard by a Supreme Court Justice, a Superior Court Judge, and a retired Superior Court Judge sitting as Judges Pro Tempore in Division One.

1982, a schedule of which is a part of this order, and
    Whereas, RCW 51.48.050 provides for a penalty for the benefit of the medical aid fund in 10 times the amount so demanded or collected, this employer is hereby assessed such penalty in the amount of $312,490.70.

In 1983, appellant completed an employer audit of respondent Inco. The audit disclosed that Inco had failed to pay premiums for certain workers. Consequently, appellant issued an order and notice to Inco pursuant to former RCW 51.52.050. The order and notice stated in part:

Audit of the employers books, records, and payrolls performed pursuant to RCW 51.48.040 discloses additional premium due in the amount of $24,173.05.

Metro and Inco subsequently appealed their orders and notices to the Board of Industrial Insurance Appeals. Both argued that the use of the order and notice was improper, and that the board was without jurisdiction to hear the appeals. On November 30, 1983, the board ruled against Metro and Inco.

On March 28, 1984, Metro and Inco applied to the superior court for writs of certiorari. The superior court granted the writs, and subsequently granted summary judgment in favor of Metro and Inco. The summary judgment orders stated in part:

2. There is no genuine issue as to any material fact;
3. The Board of Industrial Insurance Appeals *does not have jurisdiction* to review the correctness of any amounts due and payable to a State fund by an employer under the provisions of RCW 51.48.120;

. . .
    Ordered, adjudged and decreed that the Director of the Department of Labor and Industries and the Director of the Board of Industrial Insurance Appeals are ordered to cease, desist and refrain from taking any further action to assess and/or attempt to collect any sums allegedly due to the Department of Labor and Industries from appellant by means of the issuance of an order and notice dated . . . 1983 issued under RCW 51.52.050 and that any such order and notices previously issued by the Department attempting to collect sums allegedly due to

the Department of Labor and Industries are void. It is further
Ordered, adjudged and decreed that nothing contained herein shall prevent the Department of Labor and Industries from issuing a notice and order of assessment pursuant to RCW 51.48.120.

(Italics ours.) This appeal followed.

## RETROACTIVITY

Appellant first contends that recent statutory amendments which give the Board of Industrial Insurance Appeals jurisdiction over appeals from both orders and notices and notices of assessment must be retroactively applied. Appellant argues that the amendments are remedial and therefore retroactive. On the other hand, respondents contend certain legislative history establishes that the Legislature intended the amendments to apply prospectively only. We agree with respondents.

It is well settled in Washington that statutory amendments are presumed to operate prospectively. *Marine Power & Equip. Co. v. Human Rights Comm'n Hearing Tribunal,* 39 Wn. App. 609, 616, 694 P.2d 697 (1985). However,

this presumption is reversed to favor retroactive application if the enactment "is remedial and concerns procedure or forms of remedies . . ." *Agency Budget Corp. v. Washington Ins. Guar. Ass'n,* 93 Wn.2d 416, 425, 610 P.2d 361 (1980); *Miebach v. Colasurdo,* 102 Wn.2d 170, 180, 685 P.2d 1074 (1984). "A statute is remedial when it relates to practice, procedure, or remedies and does not affect a substantive or vested right." *Miebach,* at 180.

*Marine Power,* at 616–17. Since the amendments at issue create a new intermediate appeal *procedure,* it would appear initially that the amendments are remedial and therefore presumptively retroactive. *See Morgan v. Western Elec. Co.,* 69 Ohio St. 2d 278, 432 N.E.2d 157 (1982). However, Metro and Inco correctly point out that the following Senate floor colloquy evidences a legislative intent to apply the amendments prospectively:

Senator Vognild: "Senator Warnke, is there anything in this bill which affects what appears to be the current right of employers to appeal *existing* premium assessment disputes, whether or not pursuant to a departmental audit, directly to Superior Court from a department demand, notice or order?"

Senator Warnke: "No, there is not, Senator."

(Italics ours.) Senate Journal, 49th Legislature (1985), at 1892. Since Senator Warnke was chairman of the Senate Commerce and Labor Committee at the time the amendments at issue were enacted, his response to the question posed in the above quoted colloquy may be considered in determining the Legislature's intent. 2A C. Sands, *Statutory Construction* § 48.14, at 334 (4th ed. 1984); *see Marine Power,* at 619–20. Thus, in light of the rule that the primary purpose of statutory interpretation is to ascertain the Legislature's intent, *State v. Keller,* 98 Wn.2d 725, 657 P.2d 1384 (1983), we hold that this colloquy is sufficient to reverse the presumption of retroactivity arising from the remedial nature of the amendments.

Respondent also contends that a recent amendment to RCW 51.08.180 regarding the status of owner operators under the Industrial Insurance Act is remedial and, therefore, retroactive. This argument is without merit.

As we previously noted, an amendment is not remedial if it affects a substantive or vested right. *Marine Power,* at 617. The amendment at issue added the following language to RCW 51.08.180:

PROVIDED, That a person is not a worker for the purpose of this title, with respect to his or her activities attendant to operating a truck which he or she owns, and which is leased to a common or contract carrier.

Laws of 1982, ch. 80, § 1. This amendment discontinued coverage to workers who were previously covered under the Industrial Insurance Act. The amendment thus affects the vested rights of the previously covered workers. Therefore, the statute is not remedial, and the presumption of prospective application controls.

BOARD JURISDICTION

Appellant next contends the trial court erred in determining that the orders and notices were void and that the Board of Industrial Insurance Appeals did not have jurisdiction to hear the appeals. Appellant argues that it had statutory authority, pursuant to former RCW 51.52.050, to demand premiums by order and notice, and therefore the Board of Industrial Insurance Appeals had jurisdiction to hear the appeals.

On the other hand, respondents argue that the exclusive means of collecting premiums from employers after default is by notice of assessment. Therefore, they conclude that the notices and orders sent to them were improper and were not appealable to the Board of Industrial Insurance Appeals because former RCW 51.48.130 and RCW 51.52-.050 expressly remove appellate jurisdiction from the board with respect to notices of assessment. We agree.

■■ A review of the statutes at issue shows that the notice of assessment procedure in RCW 51.48.120–.140 and the collection procedure contained in RCW 51.16.150 are expressly designed for notifying and collecting from employers *after default*. On the other hand, the order and notice statute, RCW 51.52.050, does not state whether an order and notice may be used in post–default situations. Though these statutes may not be in conflict, they do relate to the same subject matter and therefore we must read them so as to give "meaning and effect to both." *Davis v. County of King,* 77 Wn.2d 930, 933, 468 P.2d 679 (1970).

Appellant contends that meaning and effect can be given to the statutes at issue if the statutory scheme is viewed as a 2–step process which allows the Department to first issue an order and notice, and then issue a notice of assessment or commence a superior court action if an employer still refuses to pay the sum due. However, appellant admits that its interpretation of the statutes at issue could result in the following procedural sequence: (1) the Department issues an order and notice; (2) the employer appeals the order and notice to the Board of Industrial Insurance Appeals; (3) the

employer appeals the board's decision to superior court; (4) the Department issues a notice of assessment; (5) the employer appeals the notice of assessment to superior court; and (6) if no further appeals, the Department files a warrant in superior court (pursuant to RCW 51.48.140) which acts as a judgment. This procedural sequence results in two superior court trials being held in the same action on the same issues. Therefore since we must attempt to give meaning and effect to all the statutes relating to this subject matter, *Davis,* and since appellant's interpretation of the statutes results in a meaningless second trial, we must reject appellant's interpretation of the statutes.

Appellant argues, however, that the two superior court trials serve different functions, and therefore the procedural sequence outlined above is meaningful. According to appellant, the superior court trial following the order and notice would only address the correctness of the premium determination, while the de novo superior court trial following the notice of assessment would cover all other issues, including "the number of employees that affect the premium or the number of hours involved." This argument is without merit.

Our review of the relevant statutes discloses no language supporting appellant's view of the superior court proceedings at issue. Furthermore, it is difficult to imagine what could possibly be left to litigate once the correctness of the premium amount and the legal obligation to pay that amount are determined in the first trial. Therefore, we hold that the procedures outlined in RCW 51.48.120–.140 and RCW 51.16.150 are the exclusive notification and collection procedures available to appellant after an employer defaults.

Appellant next contends the orders and notices in the present case were proper because respondents were not yet in default. According to appellant, a "default," for purposes of the statutes at issue, cannot occur until an employer has first been notified of sums owing. We disagree.

█ A review of the relevant statutes shows that the Leg-

islature intended the word "default" to mean any failure to pay a sum due, regardless of whether demand for payment is made by the Department of Labor and Industries. For instance, RCW 51.16.150 recognizes both a "default in any payment to any fund" and a "default [occurring] *after demand*". (Italics ours.) This language indicates that the word "default," as used by the Legislature,[1] refers to any failure to pay a sum due.[2] *Cf. Dolman v. Department of Labor & Indus.*, 105 Wn.2d 560, 565, 716 P.2d 852 (1986) (court holding that statute of limitations begins to run when sums owed to Department become due, not when delinquency is discovered). Thus, if respondents were in default prior to issuance of the orders and notices, then appellant was constrained to use the notice of assessment procedure to notify appellants of their default.

The order and notice sent to respondent Inco was utilized for collection of premiums which should have been paid prior to issuance of the order. Therefore, Inco was in default and the use of the order and notice procedure was improper because the notice of assessment procedure in RCW 51.48 and the collection procedure in RCW 51.16.150 are the exclusive post–default procedures for notification and collection of assessments.

Similarly, Metro also failed to pay a sum due when it over deducted moneys from its employees' earnings and used such moneys to pay its obligation. Thus, Metro was also in default when it received its order and notice, and therefore the use of order and notice procedure was improper.

---

[1]Words in a statute take their meaning from the context in which they are used. *State v. Wanrow*, 88 Wn.2d 221, 228, 559 P.2d 548 (1977); *Graham v. State Bar Ass'n*, 86 Wn.2d 624, 626, 548 P.2d 310 (1976).

[2]Though Division Two of this court reached a contrary conclusion in *Floor Decorators, Inc. v. Department of Labor & Indus.*, 44 Wn. App. 503, 508, 722 P.2d 884, *review granted*, 107 Wn.2d 1007, *review dismissed*, 107 Wn.2d 1019 (1986), we decline to follow that decision.

## 222

### FRIVOLOUS APPEAL

Finally, respondent argues that the appeal is frivolous and asks for fees and costs pursuant to RAP 18.9. This argument is without merit.

An appeal is frivolous only if there are "no debatable issues upon which reasonable minds might differ". *Streater v. White,* 26 Wn. App. 430, 435, 613 P.2d 187, *review denied,* 94 Wn.2d 1014 (1980). The issues in this case are clearly debatable.

The judgment is affirmed.

BRACHTENBACH and COLE, JJ. Pro Tem., concur.