IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| MARIO ARRIAGA, | ) | No. 32287-4-III |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | PUBLISHED OPINION |
| | ) | |
| DEPARTMENT OF LABOR AND | ) | |
| INDUSTRIES OF THE STATE OF | ) | |
| WASHINGTON, | ) | |
| | ) | |
| Respondent. | ) | |

LAWRENCE-BERREY, J. — When a final industrial insurance order, decision, or

award is based upon a medical determination, a physician is deemed an interested party.

In such a case, the Department of Labor and Industries (Department) must provide notice

of the order, decision, or award both to the physician and the claimant. Failure to provide

notice tolls the 60-day appeal period. At issue here is whether a segregation order was

communicated to a claimant's physician when the physician did not see the order because

of a breakdown in mail handling procedures in his office. We hold that the order was

communicated to the physician because the Department properly mailed it to the

physician's office, and it was actually delivered to the physician's office. We, therefore,

affirm the decision of the trial court, which barred the claimant's untimely appeal of the segregation order.

## FACTS

Mario Arriaga injured his right upper arm, face, and scalp while employed at Oakville Forest Products, Inc. The Department allowed a claim for an industrial injury in December 2005. Justin Sherfey, M.D., D.O., an orthopedic surgeon and osteopathic physician who treats injured workers, became Mr. Arriaga's attending physician.

On October 29, 2008, the Department issued an order segregating a cervical disc degenerative condition from Mr. Arriaga's claim. The order stated, "[t]he Department of Labor and Industries is not responsible for the condition diagnosed as: cervical disck [sic] degenerative, determined by medical evidence to be unrelated to the industrial injury for which this claim was filed." Board Record (BR) at 28. It is undisputed that the Department mailed the order to the claimant and also to Dr. Sherfey's office on October 29, 2008. It also is uncontested that Dr. Sherfey's office received a copy of the order on October 31, 2008. However, as will be detailed below, Dr. Sherfey apparently was unaware of the order until 2010.

Mr. Arriaga sought legal help with his claim in April 2010. The Department closed Mr. Arriaga's claim on November 23, 2010. In December 2010, someone from

2

Mr. Arriaga's attorney's office contacted Dr. Sherfey about Mr. Arriaga's claim. After discovering the segregation order, Dr. Sherfey protested on Mr. Arriaga's behalf. The Department affirmed the order, stating that it would not reconsider it because the protest was untimely. Mr. Arriaga appealed to the Board of Industrial Insurance Appeals (Board), which granted the appeal to review the timeliness of Dr. Sherfey's protest.

In his deposition, Dr. Sherfey explained that he functions as the attending physician for injured workers and is, therefore, familiar with the rules and regulations of the Department. His office has about 40 employees and he sees 40 to 45 patients per day. Dr. Sherfey's practice includes a department that manages paperwork, including getting authorizations, coordinating depositions, coordinating independent exams, and reviewing "some of those records." Sherfey Dep. at 23. As to his intraoffice mail handling procedures, Dr. Sherfey explained, "[t]ypically we have a protocol in place that either a hard copy is placed in a mailbox for me or I receive an electronic notification of a new document that I then either have to initial on the hard copy or I have to electronically sign in the medical record." Sherfey Dep. at 12. Dr. Sherfey stated that he reviewed mail throughout the day, but admitted that he is not necessarily given all the documents that are addressed to him.

Dr. Sherfey testified that for mail to be "communicated" to him, "[i]t would have to be appropriately received by the medical records or again our L & I management department. It would then have to be properly routed to me for review. . . . [A]fter that it would have to be properly inserted into the medical record." Sherfey Dep. at 16. Dr. Sherfey conceded that some documents are scanned without his "direct visualization." Sherfey Dep. at 21. He stated that a person in the medical records department decides whether a document is sufficiently important for his review. He explained, "[w]e have no standard protocol in place, except typically paperwork that involves the patient is supposed to come across the physician's desk." Sherfey Dep. at 23.

Somewhere in this process, the October 29 order never made it to Dr. Sherfey's desk. Dr. Sherfey explained that he had not initialed it, which suggested to him that he had not reviewed it. Although the order had been in Mr. Arriaga's file since 2008, Dr. Sherfey could not recall reviewing it until nearly two years later when Mr. Arriaga's attorney brought it to his attention. He stated that if he had reviewed the order in 2008, he "[l]ikely" would have responded with a letter indicating an additional evaluation was needed in regard to the diagnosis. Sherfey Dep. at 15.

Mr. Arriaga ultimately appealed the order in January 2011. However, the Department refused to reconsider the order "because the protest was not received within

4

the 60 day time limitation" of RCW 51.52.060(1)(a). BR at 24. The Board accepted

review of the appeal concerning the timeliness of Dr. Sherfey's protest of the segregation

order. Upon review, it also dismissed the appeal as untimely, finding:

> [Mr. Arriaga's] attending physician acknowledges that he did not protest the October 29, 2008 Notice of Decision within 60 days of the date it was communicated to his medical office, as he was unaware of the existence of the document until sometime in 2010. The timely filing of a protest or appeal is a statutorily imposed jurisdictional limitation upon every claimant's ability to get relief from a Department order and upon the Board's authority to hear an appeal. There is simply no legal precedent for excusing Mr. Arriaga from performing his statutory duty to file a timely protest or appeal. The result does not change even though he relied upon his attending physician to monitor correspondence from the Department of Labor & Industries.

BR at 18.

Mr. Arriaga appealed to the Thurston County Superior Court, which also dismissed

his appeal as untimely, finding that Dr. Sherfey received a copy of the Department's order

on October 31, 2008, and that he did not protest the order within 60 days of its receipt. In

its oral ruling, the court stated, "[m]y take on this is that the statute that requires

communication was met when this order was clearly conveyed to the physician's office."

Report of Proceedings (RP) at 18. It elaborated:

> It is my take that "communication" means that it was received as addressed, that is to the physician. If the Department had misaddressed this, if there had been some showing that a postal worker was not delivering the mail and threw it all in the back of a station wagon . . . that might be a different

5

situation, but it is clear that it was time stamped two days after it was mailed. It was received.

RP at 19.

Mr. Arriaga appeals.

## ANALYSIS

The issue before us is whether the trial court erred in concluding that the October 29, 2008, order was "communicated" to Dr. Sherfey's office when it was properly addressed and received by his office.

### Standard of Review

Washington's Industrial Insurance Act (IIA), Title 51 RCW, includes judicial review provisions that are specific to workers' compensation claims. *Rogers v. Dep't of Labor & Indus.*, 151 Wn. App. 174, 179, 210 P.3d 355 (2009). In particular, the IIA provides that the judicial review of a decision by the Board is de novo, but is limited to the evidence and testimony presented to the Board. RCW 51.52.115; *Rabey v. Dep't of Labor & Indus.*, 101 Wn. App. 390, 393, 3 P.3d 217, *review granted*, 142 Wn.2d 1007, 16 P.3d 1266 (2000). The superior court presumes the Board's findings and conclusions are "prima facie correct." RCW 51.52.115. We review the findings of the superior court's decision de novo to determine whether substantial evidence supports them and whether its conclusions of law flow from the findings. *Rogers*, 151 Wn. App. at 180 (quoting

6

*Watson v. Dep't of Labor & Indus.*, 133 Wn. App. 903, 909, 138 P.3d 177 (2006)).

### *RCW 51.52.060 and "Communicated"*

Mr. Arriaga argues that even though Dr. Sherfey's office received the order on October 31, 2008, the order was not "communicated" within the meaning of RCW 51.52.060 due to a breakdown in mail handling procedures, which resulted in the order being placed in Mr. Arriaga's file without Dr. Sherfey's knowledge. Mr. Arriaga contends the word "communicated" denotes actual possession and availability, and that because Dr. Sherfey did not have knowledge of the order's existence in October 2008, it was not available to him. Citing Board decisions, Mr. Arriaga contends it would be "unjust to Mr. Arriaga and contrary to legislative intent to hold that the Department order of October 29, 2008 had been communicated to Dr. Sherfey simply because it was received in his office on October 31, 2008." Br. of Appellant at 13. Accordingly, Mr. Arriaga contends the 60-day period to appeal under RCW 51.52.060 was tolled until Dr. Sherfey actually was aware of the order's existence.

The Department counters that an order or letter is "communicated" under RCW 51.52.060 when it is received and that Dr. Sherfey received the order when it was delivered to his correct mailing address. It contends that a breakdown in office procedures or communication does not excuse an untimely appeal, and that it is

7

incumbent upon a party or agency to ensure that it has a system in place regarding distribution of its mail. It also contends Mr. Arriaga's proposal would produce an unworkable system: "Mr. Arriaga's proposed rule of a law would allow a doctor's office to receive mail from the Department, but be able to disclaim responsibility for that receipt of mail if the office procedures are allegedly not followed." Resp't's Br. at 12. According to the Department, "[a] party has the responsibility of providing his or her address to the Department, and when an order is received at that address, it is communicated." Resp't's Br. at 12.

In his reply brief, Mr. Arriaga maintains that even if we apply the Department's interpretation of "receipt," which it defines in terms of possession and availability, there is still no evidence that Dr. Sherfey received the order. He argues that "Dr. Sherfey had no knowledge that his office had received the order in question or that the order even existed, and as a result, for all intents and purposes, it was not available to him." Appellant's Reply Br. at 7.

Washington's IIA provides injured workers a swift, certain, no fault remedy that is primarily enforced in an administrative process that the act establishes. RCW 51.04.010; *Kingery v. Dep't of Labor & Indus.*, 132 Wn.2d 162, 168-69, 937 P.2d 565 (1997). The IIA generally provides finality to Department decisions. *Kingery*, 132 Wn.2d at 169.

8

RCW 51.52.050(1) directs the Department to serve its orders, decisions, and awards on "the worker, beneficiary, employer, or other person affected thereby" by mail. When an order, decision, or award is based upon a medical determination, the attending physician is deemed an interested party who, in addition to the claimant, is entitled to receive the order, decision, or award. *Shafer v. Dep't of Labor & Indus.*, 140 Wn. App. 1, 11, 159 P.3d 473 (2007), *aff'd*, 166 Wn.2d 710, 213 P.3d 591 (2009).

The time for appeal of a Department order is specified in RCW 51.52.060(1)(a) as follows:

> [A party] . . . or other person aggrieved by an order . . . must, before he or she appeals to the courts, file with the board and the director, by mail or personally, within sixty days from the day on which a copy of the order, decision, or award *was communicated to such person*, a notice of appeal to the board.

(Emphasis added.) If a party fails to appeal within the 60-day time limit, the claim is deemed "res judicata on the issues the order encompassed, and '[t]he failure to appeal an order . . . turns the order into a final adjudication, precluding any reargument of the same claim.'" *Kustura v. Dep't of Labor & Indus.*, 142 Wn. App. 655, 669, 175 P.3d 1117 (2008) (footnote omitted) (quoting *Marley v. Dep't of Labor & Indus.*, 125 Wn.2d 533, 538, 886 P.2d 189 (1994)), *aff'd*, 169 Wn.2d 81, 233 P.3d 853 (2010).

It is well settled under Washington law that an order is "communicated" to a party within the meaning of RCW 51.52.060 upon receipt. *Kaiser Aluminum & Chem. Corp. v. Dep't of Labor & Indus.*, 57 Wn. App. 886, 889, 790 P.2d 1254 (1990); *Rodriguez v. Dep't of Labor & Indus.*, 85 Wn.2d 949, 952-53, 540 P.2d 1359 (1975). Our Supreme Court discussed the meaning of "communicated" under the IIA in *Nafus v. Department of Labor and Industries*, 142 Wash. 48, 251 P. 877 (1927). In that case, the worker's claim was initially allowed, but later closed after the Department concluded the worker's condition was not due to the work accident. *Id.* at 48-49. The Department notified the worker by sending a letter to him in April 1925. *Id.* at 49. The worker received the letter in the hospital, where he was a patient for an extended stay, and put the order in his robe pocket without reading it. *Id.* at 49-50. He later stated that "[o]ne of the nurses opened [the letter], but she did not tell me what it contained. I was in no condition to concern myself with the contents of the letter." *Id.* at 50.

In January 1926, the worker appealed the claim closure, asserting he had not received notice because he had not read the letter. *Id.* at 51. The Department responded that the appeal was untimely. The court concluded the order had been communicated under the IIA, reasoning:

> The fact that the respondent says that he did not read the letter and did not know its contents is not controlling. The department had done all it was required to do in making "communication" of its decision in closing the claim to the party affected thereby. There is no evidence from which it would be found that the respondent was not competent to understand the nature of the communication at the time.

*Id.* at 52.

Similarly here, the fact that Dr. Sherfey did not read the letter upon receipt does not toll the statutory deadline. The Department addressed the order to Dr. Sherfey's correct address, and the order was actually delivered to the correct address. This constitutes communication under RCW 51.52.060.

*Rodriguez* also supports our conclusion. In that case, a worker was injured on the job and timely filed his claim. *Rodriguez*, 85 Wn.2d at 949-50. The Department initially granted his claim, but subsequently sent the worker a letter closing his claim. *Id.* at 950. The worker could speak only in Spanish, and could not read or write in either Spanish or English. *Id.* The worker did not timely appeal the Department's order closing his claim. The Supreme Court reiterated the rule that, "the word 'communicated' contained in RCW 51.52.060 requires only that a copy of the order be *received* by the workman." *Rodriguez*, 85 Wn.2d at 952-53 (emphasis added). Although the *Rodriguez* court ultimately granted equitable relief based on the worker's illiteracy, it made a point to distinguish *Nafus*, which involved "a mere failure or refusal to read a letter from the

11

department" from a case where "extreme illiteracy" rendered the claimant virtually incompetent. *Rodriguez*, 85 Wn.2d at 954.

Despite this well-settled precedent, Mr. Arriaga cites *Shafer*, 140 Wn. App. at 11, and Board decisions in his attempt to broaden the rule. In *Shafer*, the court stated:

> The legislature expects the attending physician to serve as a medical advocate for the injured worker and as a fulcrum in the agency's evaluation of the claim. The Department implements this expectation by advising physicians they have the right and are expected to seek review on their patients' behalf. The physician cannot decide whether to appeal unless the physician knows of the order. Failure to ensure that the physician learns of the order therefore deprives both the worker and the agency of the voice of the physician, just at the critical point of finalizing a determination of the worker's future medical condition.

*Id.* We interpret the above language as justification for requiring the Department to provide the worker's physician copies of certain orders, decisions, or awards. We do not interpret it as changing prior Supreme Court precedent, which does *not* require a party to have actually read the properly addressed and delivered order.

Citing *In re: Dorena R. Hirschman*, No. 09 17130 (Wash. Bd. of Indus. Ins. Appeals May 7, 2010) and *In re: Edward S. Morgan*, No. 9667 (Wash. Bd. of Indus. Ins. Appeals Aug. 25, 1959), Mr. Arriaga contends that "communication [is] not complete" until a recipient has actual knowledge of the order. Br. of Appellant at 12. Board decisions are not binding precedent for this court; however, we may give substantial

weight to an agency's interpretation of the laws it is charged to enforce. *Lynn v. Dep't of Labor & Indus.*, 130 Wn. App. 829, 836, 125 P.3d 202 (2005); *Jensen v. Dep't of Ecology*, 102 Wn.2d 109, 113, 685 P.2d 1068 (1984).

In *Hirschman*, the Department mailed a copy of an order to Ms. Hirschman's house while she was on vacation. Her employer argued that the order was communicated to Ms. Hirschman, regardless of whether she was home to receive and read it. The Department disagreed with the employer, concluding that the order was not communicated to Ms. Hirschman until she returned from her trip. We decline to follow *Hirschman* because it conflicts with *Nafus* and *Rodriguez*, which look to whether the mailing was properly addressed and delivered.[1]

Regardless, there was no testimony that Dr. Sherfey was out of town for any period of time during October 2008. In fact, it was nearly two years between the time the order was received in his office and Mr. Arriaga's attorneys notified Dr. Sherfey of the order. The record also shows that Dr. Sherfey was treating Mr. Arriaga regularly during that time and that the order was available to him at any time he chose to review Mr. Arriaga's chart. A breakdown in office mail handling protocol is not analogous to a recipient being out of town when a Department order is delivered.

---

[1] Although we decline to follow *Hirschman*, we note that *Rodriguez* allows courts

13

*Morgan* is also inapposite. In that case, the claimant worked in the timber industry and kept a separate address from his physical location, which changed according to his work. While off work due to an industrial injury, the worker continued to maintain his permanent mailing address and checked his mail daily. Although the claimant testified that he had received other communications from the Department at his permanent mailing address, he stated he did not receive the closing order at issue in the case. Assuming that the evidence was "sufficient to give rise to the presumption of receipt by the addressee in due course of mails," the Board found these circumstances were sufficient to overcome the presumption. *Morgan*, No. 9667 (Wash. Bd. of Indus. Ins. Appeals). Noting the proposition that mailing a letter is prima facie evidence of receipt, the court then noted:

> Although a claimant who deliberately or negligently disregards or fails to read a communication delivered to his residence may well be charged with knowledge or notice thereof, the claimant in this case called for his mail each day and, in our opinion, it would be manifestly unjust and contrary to the legislative intent to charge him with notice of an order he did not receive based solely on a presumption of its receipt at a "mail depot."

*Id.*

In contrast to *Morgan*, the "presumption of receipt" is not at issue here. This presumption arises once proper mailing of an item is established. *Scheeler v. Emp't Sec. Dep't*, 122 Wn. App. 484, 489, 93 P.3d 965 (2004). Here, it is not disputed that the

---

to equitably toll the 60-day period under appropriate circumstances.

14

Department mailed the letter to Dr. Sherfey's office and that it was received in the office on October 31, 2008. In fact, the letter was date stamped and scanned into the records. There is no evidence that due to an error in mailing, he did not receive the order. Any failure in Dr. Sherfey's actual receipt of the order was due to the breakdown of his office procedures, not a defect in the Department's mailing.

A more analogous Board case is *In re: Robert A. Wiyrick*, Nos. 01 11323 & 01 12028 (Wash. Bd. of Indus. Ins. Appeals Aug. 26, 2003). In that case, the claimant's attorney improperly noted the time for extension in which to file a petition for review. The issue before the Board was whether the subsequent failure to file a timely motion was due to excusable neglect. The Board was clear in its decision: "[*t*]*he breakdown of office procedures or secretarial error, which results in claimant's failure to file a timely petition for review, cannot be considered excusable neglect.*" *Id.* (emphasis added).

The same reasoning applies here. Dr. Sherfey's office received the Department order on October 31, 2008. The delay in Dr. Sherfey's actual knowledge of the order was due to an intraoffice mail delivery breakdown, which is not excusable neglect or a basis for tolling the statutory deadline. Mr. Arriaga suggests that we liberally construe the statute to grant the relief he requests. However, liberal construction does not apply here because the statute in question is not ambiguous. *Harris v. Dep't of Labor & Indus.*, 120

No. 32287-4-III
*Arriaga v. Dep't of Labor & Indus.*

Wn.2d 461, 472 n.7, 474, 843 P.2d 1056 (1993). Accordingly, the trial court did not err

in concluding that Mr. Arriaga's appeal was untimely.

We affirm.

_____
Lawrence-Berrey, J.

WE CONCUR:

_____
Korsmo, J.

_____
Siddoway, C.J.

16