**NOTICE:  SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| DEPT. OF LABOR & INDUSTRIES,<br><br>                Respondent,<br><br>        v.<br><br>RALPH K. SIMMONS,<br><br>                Appellant. | No. 84529-2-I<br><br>DIVISION ONE<br><br>PUBLISHED OPINION |

DíAZ, J. — Ralph K. Simmons ("Simmons") appeals the superior court's denial of his motion to vacate a tax warrant issued by the Department of Labor and Industries ("Department") for unpaid workers' compensation taxes. Simmons argues that RCW 51.48.120 requires actual receipt of a notice of assessment ("NOA") underlying a tax warrant. From here, he argues his tax warrant is "void," as he claims he never actually received the underlying NOA, thus entitling him to relief under CR 60(b)(5) or CR 60(b)(11). We affirm the superior court's denial of the motion to vacate because RCW 51.48.120 does not require actual receipt.

I.      BACKGROUND

Simmons owned and operated a sole proprietorship in his name which specialized in roofing. He claims his business ceased all operations in 2016, after which he traveled internationally until 2018. The address of the sole proprietorship

was the same as Simmons' personal address. While he traveled, Simmons maintained a home at that address, but left it, and any mail received there, in the care of his two teenage sons and adult stepson.

Simmons' tax warrant stemmed from the Department's December 2016 compliance stop. The Department inspector observed four workers re-roofing an apartment complex. The onsite foreman stated they were working for "Ralph Simmons." Soon after, the foreman and workers went for a "smoke break" before quickly leaving the worksite. In July 2017, the Department launched an audit of Simmons' business for unpaid workers' compensation taxes.

The Department unsuccessfully tried to contact Simmons six times, between July 2017 and March 2018, before issuing the tax warrant. Specifically, it mailed a routine "new-audit letter" twice and left a voicemail once, in the summer of 2017. It also mailed an administrative subpoena under RCW 51.04.040. Then, upon completing its investigation, it sent the NOA for $52,376.45 in unpaid workers' compensation taxes by certified mail in October 2017. USPS attempted to deliver the NOA twice, but the NOA was returned to the Department as "unclaimed." Finally, the Department resent the NOA, by regular mail, in March 2018.

In May 2018, the Department issued a tax warrant against Simmons which was filed with the King County Superior Court. The Department also mailed a copy of the tax warrant to Simmons' address.

Simmons claims he first learned of this matter when, in January 2022, he returned from a trip and received a Department account statement indicating he

owed over $60,000, which now included interest. Simmons contacted the Department the next day.

Simmons filed a written protest with the Department which was forwarded to the Board of Industrial Insurance Appeals ("Board"). The Board denied the appeal in June 2022.

Instead of appealing the Board's order directly, Simmons moved to vacate the Department's tax warrant under CR 60(b) in the King County Superior Court in July 2022. The court denied the motion in August 2022. The court found that RCW 51.04.082 and RCW 51.48.120 were unambiguous and that service of the NOA underlying the warrant was complete upon certified mailing. Simmons timely appeals.

## II.     ANALYSIS

The Industrial Insurance Act ("Title 51") was a "'grand compromise' that granted immunity to employers from civil suits initiated by their workers and provided workers with 'a swift, no-fault compensation system for injuries on the job.'" Dep't of Lab. and Indus. v. Lyons Enters., Inc., 185 Wn.2d 721, 733, 374 P.3d 1097 (2016) (quoting Walston v. Boeing Co., 181 Wn.2d 391, 396, 344 P.3d 519 (2014)). As part of this compromise, employers must maintain workers' compensation coverage through the Department. RCW 51.16.060. The Department can audit employers and issue assessments for any past-due premiums. RCW 51.16.035; RCW 51.48.030, .040, .120.

A. Service Under RCW 51.48.120

   1. Principles of Statutory Interpretation and Standard of Review

No. 84529-2-I/4

"When interpreting a statute, the court's fundamental objective is to ascertain and give effect to the legislature's intent." Leander v. Wash. Dep't of Ret. Sys., 186 Wn.2d 393, 405, 377 P.3d 199 (2016). "We begin with the plain meaning of the statute . . . consider[ing] the text of the provision in question, the context of the statute in which the provision is found, related provisions, amendments to the provision, and the statutory scheme as a whole." Id.

"If the meaning of the statute is plain on its face, then we must give effect to that meaning as an expression of legislative intent." Id. "If, after this inquiry, the statute remains ambiguous or unclear, it is appropriate to resort to aids of construction and legislative history." Id.

As statutory interpretation presents a question of law, we review it de novo. Burien Town Square Condo. Ass'n v. Burien Town Square Parcel 1, LLC, 3 Wn. App. 2d 571, 574, 416 P.3d 1286 (2018).

2. Discussion

An employer must challenge the Department's assessment "within thirty days of the date of *service* of the notice of assessment[.]" RCW 51.48.120 (emphasis added). Service requires

> mailing such notice to the employer by a method for which receipt *can be* confirmed or tracked to the employer's last known address or served in the manner prescribed for the service of a summons in a civil action.

Id. (emphasis added). The latter option (allowing methods of service used in civil actions generally) requires either personal service or an alternate method of

4

service (such as publication) with leave of court. CR 4(d)(2)-(4).

Simmons argues actual receipt is required as "[t]he plain language of [RCW 51.48.120] includes the word 'receipt' when choosing to mail the order or personal service in the alternative." And he adds, "[t]here would be no need to mention receipt or add in an option to personally serve an employer who has allegedly defaulted on their tax payment if reasonable notice was not intended." We disagree for several reasons.

To begin with, the plain language of RCW 51.48.120 is unambiguous. It states that notice is sufficient if "receipt *can* be confirmed or tracked[.]" RCW 51.48.120 (emphasis added). The legislature stops short of requiring receipt or actual confirmation of receipt. "If the legislature had intended to require evidence of actual delivery it could have said so expressly[.]" In re Marriage of McLean, 132 Wn.2d 301, 307, 937 P.2d 602 (1997). It did not and, thus, we hold that this permissive language authorizes any method of mailing by which receipt *can* be confirmed or tracked to the employer's last known address.

Further, the statute is not rendered ambiguous simply because it does not enumerate the ways receipt "can be" confirmed. See, e.g., City of Edmonds v. Edmonds Ebb Tide Ass'n of Apartment Owners, __ Wn. App. __, 11, 534 P.3d 392 (2023) ("The trial court mistook the *absence of a limitation* regarding depth as ambiguity."); Wash. Monumental & Cut Stone Co. v. Murphy, 81 Wn. 266, 270, 142 P. 665 (1914) ("The contract itself would hardly seem ambiguous, since, by particularizing the things included, steps, platforms, and courses, it excluded all things not enumerated.").

Moreover, "the context of the statute in which the provision is found" supports this plain meaning of the statute. Leander, 186 Wn.2d at 405. Namely, the legislature specifically disclaimed the necessity of actual receipt broadly in Title 51, stating that "*[f]ailure of the employer to receive such notice* or order *whether served or mailed* shall not release the employer from any tax or any increases or penalties thereon." RCW 51.04.082 (emphasis added). In other words, an employer is not released from their Title 51 obligations even if they did not actually receive a given notice or order, "whether served or mailed." The statutory scheme in RCW 51.04.082 supports our interpretation of RCW 51.48.120.

Additionally, as Simmons recognizes, there is "sparse" authority interpreting the notice procedures of Title 51 generally, and neither party provides binding authority directly on point interpreting RCW 51.48.120 specifically. However, our interpretation of that statute is consistent with our Supreme Court's and this court's prior analyses of other service statutes similar to RCW 51.48.120, where a party asserted actual receipt was required.

In McLean, our Supreme Court considered a statute which required that "service shall be by personal service *or by any form of mail requiring a return receipt*." 132 Wn.2d at 303 (citing RCW 26.09.175(2)) (emphasis added). The Court compared the language in that statute to the language in two other statutes, one which required service to be "sent by *registered mail requiring personal delivery* . . . [where] defendant's return receipt ... [is] appended[.]" Id. at 307 (quoting RCW 46.64.040) (emphasis added). The second statute required service "by registered or certified mail if a return receipt *with the signature of the party*

6

being served is filed with the court." Id. (quoting RCW 12.40.040) (emphasis added).

The Court observed that the statute at issue (RCW 26.09.175(2)), unlike the other two statutes (RCW 46.64.040 and RCW 12.40.040) "does not state that the return receipt must be signed by the addressee, nor otherwise expressly indicate that actual delivery is required." Id. In turn, the Court held, "[i]f the legislature had intended to require evidence of actual delivery, it could have said so expressly[.]" Id.

By way of further instructive contrast, this court has interpreted another service statute within Title 51. Arriaga v. Dep't of Labor and Indus., 183 Wn. App. 817, 335 P.3d 977 (2014). The case involved RCW 51.52.060, which expressly stated that a 60-day appeals period begins when an order is "communicated." Id. at 823. We held that "[i]t is well settled under Washington law that an order is 'communicated' to a party . . . upon receipt." Id. at 825. As such, we further held that the 60-day appeals period at issue in Arriaga started running when the order was actually delivered. Id. at 826.

The statute at issue in Arriaga (RCW 51.52.060), however, expressly uses the term "communicated," which appears nowhere in RCW 51.48.120. Id. at 823 (citing RCW 51.52.060). On the contrary, Title 51 specifically goes on to state that "the procedures outlined in RCW 51.48.120–.140 and RCW 51.16.150 are the exclusive notification and collection procedures available to appellant after an employer defaults." Dep't of Labor and Indus. v. Metro Hauling Inc., 48 Wn. App. 214, 220, 738 P.2d 1063 (1987). In other words, while the statute at issue in

Arriaga is part of Title 51, its text is distinguishable from RCW 51.48.120; and Metro Hauling expressly states that that statute cannot control service requirements when an employer defaults. Again, if the legislature wished to ensure the Department actually communicated with a truant employer, it knew how. McLean, 132 Wn.2d at 307.

Finally, Simmons asks us to rely on In re Jaz Services, LLC, where the Board indeed directly considered the service requirements of RCW 51.48.120. No. 13 11377, at 3 (Wash. Bd. of Indus. Ins. Appeals Apr. 9, 2015), http://biia.wa.gov/SDPDF/1311377.pdf.[1] There, the Board determined that the 30-day period to appeal an assessment ran from the date the NOA was actually received. Id.

We disagree with Jaz Services and afford it no deference as we respectfully hold it was decided in error. The Board stated that "[t]he statute, in allowing for certified mail, contemplates that 'receipt [can] be confirmed.'" Jaz Servs. at 3 (quoting RCW 51.48.120) (emphasis added) (omission added). The Board erred in omitting "can" from the text of RCW 51.48.120 in its analysis. A tribunal "may not delete language from an unambiguous statute." State v. J.P., 149 Wn.2d 444, 450, 69 P.3d 318 (2003). In doing so, the Board materially changed the meaning of the statute from one in which service is proper if receipt could (but may not be)

---

[1] As acknowledged by Simmons, decisions by the Board are not binding on this court. However, this decision is designated as a "significant decision," which is defined as a decision of "substantial importance to the [B]oard in carrying out its duties." Id. (citing WAC 263-12-195(1)). The Board's "significant decisions" are persuasive authority in interpreting the Act. Clark County v. Maphet, 10 Wn. App. 2d 420, 441, 451 P.3d 713 (2019).

confirmed, to one in which service must be confirmed. As such, we do not follow the Board's decision.

A.    Relief Under CR 60(b)(5) or (b)(11)

A party may seek relief "from a final judgment, order, or proceeding" if "[t]he judgment is void." CR 60(b)(5). "A default judgment . . . is void if the court did not have personal jurisdiction over that party." Delex Inc. v. Sukhoi Civil Aircraft Co., 193 Wn. App. 464, 468, 372 P.3d 797 (2016). A court does not have personal jurisdiction over a party if, for among other reasons, service was improper. Id.

A party may also seek relief from a judgment for "[a]ny other reason justifying relief from the operation of the judgment." CR 60(b)(11). "To vacate a judgment under CR 60(b)(11), the case must involve 'extraordinary circumstances,' which constitute irregularities extraneous to the proceeding." State v. Ward, 125 Wn. App. 374, 379, 104 P.3d 751 (2005).

Simmons argues the tax warrant is not "final" as the underlying NOA was improperly served, thus rending the tax warrant "void." Simmons similarly argues the improper service of the NOA was an "extraordinary circumstance" due to the resulting violation of his due process rights. However, as service of the NOA was proper under RCW 51.48.120, we need not reach the applicability of CR 60(b)(5) or (b)(11) to tax warrants or any further issue. The judgment was not void – at least due to service being improper – and there was nothing otherwise extraordinary about a person failing to check his mail when traveling.

9

B.      CONCLUSION

For these reasons, we affirm the superior court's denial of the motion to vacate.

Díaz, J.

WE CONCUR:

Feldman, J.                                Mann, J.